PRINCE GEORGE'S COUNTY, MARYLAND ET AL.
*v.* BLUE BIRD CAB COMPANY, INC. ET AL.

[No. 124, September Term, 1971.]

*Decided December 10, 1971.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, SINGLEY, SMITH and DIGGES, JJ.

*Jess J. Smith, Jr., Associate County Attorney,* with whom was *Walter H. Maloney, Jr., County Attorney,* on the brief, for appellants.

*Charles A. Dukes, Jr.,* with whom were *Dukes, Troese, Mann & Wilson* on the brief, for Blue Bird Cab Company, Inc., part of appellees. No brief filed on behalf of other appellee.

DIGGES, J., delivered the opinion of the Court.

This is an appeal from a decision of the Circuit Court for Prince George's County (Loveless, J.) which ordered Prince George's County to release and return to its owner, Blue Bird Cab Company, Inc., a taxicab that was seized by the county police under the provisions of Maryland Code (1957, 1971 Repl. Vol.), Art. 27, § 297. At the same time Judge Loveless dismissed a forfeiture petition filed by the State. From these decisions we have before us only the appeal of the County.[1]

The facts of this dispute are relatively simple and com-

---

1. The petition for forfeiture filed by the State against Blue Bird and two actions seeking return of the cab filed by appellee against Prince George's County were all heard by the court at the same time. From an adverse ruling, the State merely filed notice of appeal but failed to pursue the matter further.

pletely uncontroverted. Charles E. Gray signed a one year lease with the appellee, Blue Bird, in which he agreed to pay each day a $16.00 rental fee for the use of its cab. The company maintains that this payment requirement in effect created a day to day lease and that the only reason a written yearly lease even existed was to exempt the drivers from "employment security." The cab company also stated that if a driver missed more than a day's payment it began to look for him so it would "know where our birds are" and to recoup the rent. Gray had in fact missed two or three daily payments when on February 10, 1971 he was arrested by county police as he was sitting in his cab outside of Central High School in Prince George's County. Police officers had kept this specific area under surveillance since they had information heroin was being sold there to high school students. On that particular day officers had the "bird" in sight and observed what apparently was a heroin transaction inside the cab between the driver and a student. They immediately apprehended the driver, searched the cab and upon discovering heroin hidden in it, charged Gray with unlawful possession with intent to distribute that dangerous drug (Art. 27, § 286). The cab was also seized pursuant to Art. 27, § 297 which provides under subsection (a) (4) that:

> "All conveyances including aircraft, vehicles, or vessels, which are used, or intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of . . . [controlled dangerous drugs, shall be subject to forfeiture]."

Following seizure of the cab, Blue Bird filed legal petitions seeking its release, arguing that the exemption for common carriers, spelled out in subsection (a) (4) (a), which will be referred to later, prevented forfeiture in this case. The trial judge accepted this argument in holding for the appellee. However, we are not so convinced and reverse that decision.

In the case before us, the cab company argues, and with some logic, that since it is an innocent party it should not be deprived of its property. However, the whole history of forfeiture, as an adjunct to criminal activity, simply undermines this reasoning. Forfeiture is grounded in the legal fiction that an inanimate object can be guilty of a crime. *United States v. U. S. Coin and Currency,* 401 U. S. 715, 91 S. Ct. 1041, 28 L.Ed.2d 434 (1971); *United States v. One 1940 Packard Coupe,* 36 F. Supp. 788 (1941). In *Various Items of Personal Property v. U. S.,* 282 U. S. 577, 581, 75 L. Ed. 558, 561 (1931) Mr. Justice Sutherland for the United States Supreme Court said:

> "It is the property which is proceeded against, and, by resort to a legal fiction, held guilty and condemned as though it were conscious instead of inanimate and insentient. In a criminal prosecution it is the wrongdoer in person who is proceeded against, convicted and punished. The forfeiture is no part of the punishment for the criminal offense."

The precursor to this view is apparently the ancient law of deodand found in Mosaic law: [2]

> "If an ox gore a man or a woman, and they die, he shall be stoned and his flesh shall not be eaten, but the owner of the ox shall be quit." Exodus 21:28.

According to Justice Holmes in his famous work, *The Common Law,* 25 (1881), quoting from an unknown source, this view was reiterated in the early part of the 16th century. "Where a man killeth another with the sword of John of Stile, the sword shall be forfeit as

---

2. Deodand has been defined as "[a]ny personal chattel which was the immediate occasion of the death of any reasonable creature, and which was forfeited to the crown to be applied to *pious* uses, and distributed in alms by the high almoner." *Black's Law Dictionary.*

deodand, and yet no default is in the owner." [3] The proceedings in cases of this type were against the instrument which caused the injury and not its owner. Forfeiture today, unless otherwise specifically provided by statute, is a civil in rem action with the burden of proof necessary to sustain it, being a mere preponderance of the evidence and not proof beyond a reasonable doubt. Generally throughout the country the innocence of the owner is of no consequence. *Lilienthal's Tobacco v. United States,* 97 U. S. 237, 24 L. Ed. 901 (1878) ; *Martin v. United States,* 277 F. 2d 785 (1960) ; 38 Notre Dame Law. 727 (1963). *But see United States v. U. S. Coin and Currency, supra.*

In the present action the County does not argue that Blue Bird is a culpable party. But that is insignificant, for in Maryland under the applicable statute at the time of this seizure, lack of complicity by the owner, unless rescued by the stated exceptions in the law, is not a defense and in fact it makes no difference whether there is any conviction of a crime related to those seized goods.[4] It is interesting to note that prior to July 1, 1970 the law in Maryland was contrary to the general view. Code (1957, 1967 Repl. Vol.) Art. 27, § 301 stated in part:

> ". . . [A]ny motor vehicle or other vehicle, vessel or aircraft used or employed in the concealment, conveying or transporting of any such narcotic drug, or used during the course of any violation of this subtitle by any person or per-

---

3. "John-a-Stiles—usu. cap. J & S [alter. of earlier John at Stile, fr. the name John + at Stile, prob. fr. ME *atte stile* at the stile] archaic: the second party to legal proceedings when the true names of both parties are unknown—compare JOHN-A-NOKES

John-a-Nokes—usu. cap. J & N [alter. of earlier John at Noke, fr. the name John + at Noke, prob. fr. ME *atten ok* at the oak tree] archaic: a party to legal proceedings whose true name is unknown (as willing to plead for John-a-Nokes as for the first noble of the land—Sir Walter Scott)—compare JOHN-A-STILES" *Webster's Third International Dictionary.*

4. Oddly enough, Charles Gray has never been indicted or convicted of unlawful possession of heroin with intent to distribute or any other criminal offense related to this incident.

sons convicted of the same, shall upon the conviction or convictions be declared by the court to be forfeited to the county or to Baltimore City, as the case may be; provided that no vehicle shall be forfeited hereunder *unless the owner thereof authorized or permitted such use or employment."* (Emphasis added.)

This Court accepted that statutory mandate in *Commercial Credit Corp. v. State,* 258 Md. 192, 203, 265 A. 2d 748 (1970), where we said: "The purpose of Code, Art. 27, § 301, *supra,* is to deter violations of the narcotics laws but not at the expense of innocent persons." This conclusion as well as the holding in that case is no longer operative. *Commercial Credit* was decided on May 12, 1970, but effective July 1 of that year the Legislature, by Ch. 403, Laws of Maryland 1970, repealed Art. 27, §§ 276-313D and enacted a new law on *Health—Controlled Dangerous Substances* which more closely aligned the forfeiture provision to the historical concepts of deodand.

The appellee recognizes the statutory changes made in Art. 27, but contends that in spite of these modifications its cab is not subject to forfeiture. It first claims that even under the new law the common carrier provision, § 297 (a) (4) (a), still prevents a forfeiture here since Gray was not an "other person in charge." That subsection reads:

"No conveyance used by any person as a common carrier in the transaction of business as a common carrier shall be forfeited under the subheading unless it shall appear that the *owner or other person in charge* of such conveyance was a consenting party or privy to a violation of this subheading;" (emphasis added).

Blue Bird submits that Gray's failure to pay his daily rent for two or three days amounted to a breach of the lease agreement and that use of the cab following this breach was unauthorized. However, the cab company

agrees that while full time drivers signed a yearly contract, that on a number of occasions men who did not promptly meet this daily payment requirement were still allowed to keep their cab. Mr. Arbia Pasha Cayton, the vice president of Blue Bird, at trial said: "I think it was three days on our books that had not been satisfied, and we had been looking for him [Gray]. Q. Looking for him for what? A. For our lease rent." He did not claim that Blue Bird wanted the cab back or considered the lease void. Rather, the appellee was simply trying to recover unpaid rent. This testimony of their own officer vitiates any conclusion that Gray was not in charge of the vehicle.

The appellee's second argument is that the forfeiture should be prevented under § 297 (a) (4) (b), which provides:

"No conveyance shall be forfeited under the provisions of this section by reason of any act or omission established by the owner thereof to have been committed or omitted by any person other than such owner while such conveyance was unlawfully in the possession of a person other than the owner *in violation of the criminal laws of the United States, or of any state;"* (emphasis added).

While the written lease between Gray and Blue Bird was not produced at trial, the reasoning under this theory is that the possession of heroin in the cab by Gray was in violation of a general lease provision; and therefore the use of the vehicle was unauthorized. Even if we accept verbal testimony concerning the contents of the lease, in the present case subsection (a) (4) (b) is but a saving clause that does not save. Unquestionably, possession of a dangerous drug such as heroin is a violation of the criminal laws of Maryland, however the use of the cab, in contravention of the lease does not in and of itself violate the criminal laws of this State. Failure to adhere to the conditions of an agreement cannot *create* a crim-

inal offense and a criminal remedy is not available to redress such a breach of lease; but rather it involves a civil proceeding between the lessor and lessee.

The general tenor of Blue Bird's chirpings is that as an innocent, law abiding party, it should not suffer from the harsh provisions of this statute. It has specifically not raised constitutional questions, but the Supreme Court, as well as other courts, has previously indicated that similar statutes were constitutional. *Van Oster v. Kansas,* 272 U.S. 465, 468, 47 S. Ct. 133, 71 L. Ed. 354 (1926) ; *Goldsmith, Jr.-Grant Co. v. United States,* 254 U. S. 505, 41 S. Ct. 189, 65 L. Ed. 376 (1921) ; *In Re One 1965 Ford Mustang,* 10 Ariz. App. 45, 455 P. 2d 995 (1969) ; *United States v. 46 Gambling Devices,* 138 F. Supp. 896 (D.C. Md. 1956). *But see United States v. U. S. Coin and Currency,* 401 U. S. 715, 91 S. Ct. 1041, 28 L.Ed.2d 434 (1971). We agree that in some ways this is a harsh law; however, it is within the Legislature's power to decide whether such a forfeiture provision is desirable. Its purpose is to attempt not only to curtail drug traffic in this state, but to discourage such a blight from continuing in the future. Historically, decisive action has been required to prevent any plague from spreading. In the present case the Legislature has clearly indicated its purpose for this act. It is to control the proliferation of dangerous drugs in our society and it is a noble purpose, but an arduous task. The measures that have been taken are not out of step with the great weight of authority.

> *Order in law No. 47520 and equity No. D-5034, both in the Circuit Court for Prince George's County, reversed.*
>
> *Costs to be paid by Blue Bird Cab Company, Inc., appellee.*