LUMAR SALES, INC. *v.* STATE OF MARYLAND

[No. 223, September Term, 1972.]

*Decided March 20, 1973.*

The cause was argued before MURPHY, C. J., and BARNES, MCWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*Richard D. Rosenthal* and *Gerald A. Meola* for appellant.

*Millard S. Rubenstein, Special Assistant Attorney General,* with whom was *Francis B. Burch, Attorney General,* on the brief, for appellee.

BARNES, J., delivered the opinion of the Court.

This appeal involves the propriety of an order of the Baltimore City Court (Rasin, J.), dated August 25, 1972, declaring a 1971 Cadillac, Maryland License No. LL-3452, forfeited to the State of Maryland to the use of Donald D. Pomerleau, Police Commissioner of Baltimore City, it having been in close proximity to contraband controlled dangerous substances (heroin and cocaine) or controlled paraphernalia which otherwise had been used in connection with the illegal distribution, dispensation or possession of controlled dangerous substances or controlled paraphernalia, pursuant to Code (1971 Repl. Vol.) Art. 27, § 297.

The appellant, Lumar Sales, Inc. (Lumar), entered into a contract to sell the Cadillac in question on March 15, 1972, to "Delores Jada." The sale was made pursuant to Code (1969 Repl. Vol.) Art. 83, § 128, *et seq.* by which Lumar reserved title to the automobile by using a conditional sales contract, duly recorded among the Chattel Records of the Superior Court of Baltimore City. The existing security interest is for $5,328. Lumar's salesman took a credit statement from "Delores Jada" and telephoned it into the First National Bank of Maryland to make a credit report. The applicant for the loan had stated that she was buying her home. The bank

verified with the mortgagee that the applicant, "Delores Jada," was purchasing the home at 1641 Kingsway and that she was employed as a beauty stylist at the place of employment she had given. Credit was also verified with the Chesapeake Furniture Company in the name "Delores Jada." The bank then telephoned Lumar that because the applicant had no previous automobile financing experience, it would be unable to handle the financing based upon the information it had acquired. Inasmuch as everything had "checked out," Lumar decided to finance the Cadillac itself. Lumar had no reason to believe that "Delores Jada" was "anyone else." Lumar also filed its security interest in the Cadillac with the Motor Vehicles Administration.

On June 10, 1972, Officer David Harris of the Central Police District in Baltimore met with a reliable informant who stated that he had just bought two bags of heroin from "Fat Lucille." The informant told Officer Harris that Fat Lucille and another female would be selling narcotics from a brown Cadillac parked in the 1500 Block of Pennsylvania Avenue. Officer Harris and another plainclothes detective proceeded immediately to that area where they saw the Cadillac in question. Within a ten-minute period, the officers observed approximately ten known drug addicts approach the vehicle, pass money into the car, receive a small package and thereafter walk away.

The two officers then approached the Cadillac, placed the two women under arrest and, in checking Fat Lucille's pocketbook, discovered a .38 caliber Charter Arms revolver containing five unspent bullets as well as 19 glassine bags containing a white powder later determined to be heroin. Fat Lucille also pulled a tin foil wrapper from her bra containing 50 glassine bags containing heroin and still later provided a change purse from her underwear containing 20 glassine bags of heroin and 11 tin foil wrappers containing cocaine. The two women were later duly warned of their rights and booked for violation of the narcotic laws.

Officer Harris testified that Fat Lucile was Lucille Westcott. She also used the name Delores Jada which was on the registration card of the Cadillac. He stated that "she goes by several aliases" in addition to Delores Jada, *i.e.*, Lucille Allen, Lucille Logan, Lucille Fisher and Ethel Smith.

On June 14, 1972, the State of Maryland filed a petition to forfeit the Cadillac to the use of the Police Commissioner of Baltimore City in the Baltimore City Court. On July 7, 1972, Lumar, as a party in interest and claimant, filed an answer to the State's petition and show cause order, asserting its right to the Cadillac, that forfeiture would be improper under Art. 27, § 297 and that the proposed forfeiture would violate both the due process clauses of the Federal and State Constitutions. It prayed that the automobile be returned to it.

In the hearing before Judge Rasin (specially assigned to the Supreme Bench of Baltimore City), the above facts were given and arguments were heard on behalf of the respective parties. Judge Rasin concluded that under the then applicable law the Cadillac should be forfeited. From an order of August 25, 1972, forfeiting the Cadillac to the State, Lumar entered a timely appeal to this Court.

The original provision for statutory forfeiture of vehicles used in the concealment or transportation of narcotic drugs was contained in Chapter 471 of the Acts of 1951, effective June 1, 1951. This Act provided that such vehicles should not be forfeited "unless the owner thereof authorized or permitted such use or employment."

Chapter 403 of the Acts of 1970 was a substantial revision of the criminal provisions in regard to narcotic and other drugs, designated as "controlled dangerous substances." This statute made important changes in the existing law in regard to the forfeiture of vehicles and other property used, or intended to be used, to transport or facilitate the sale, receipt, possession or concealment of controlled dangerous substances. Art. 27,

§ 297 (a) in regard to forfeitures generally provided in subsection (4) that all vehicles so used should be "subject to forfeiture and no property right shall exist in them" except (a) conveyances used by a common carrier in the transaction of its business unless it appears that the owner or person in charge was a consenting party or privy to a violation of the subheading and (b) no conveyance so used "by reason of any act or omission established by the owner thereof to have been committed or omitted by any person other than such owner while such conveyance was unlawfully in the possession of a person other than the owner in violation of the criminal laws of the United States, or of any state; * * *."

The General Assembly by Chapter 659 of the Acts of 1972 added new Sections 297 (f) through 297 (w) providing certain guidelines and procedures for the seizure and forfeiture of motor vehicles which substantially liberalized the existing law in that regard but, unfortunately for Lumar, Chapter 659 was not effective until July 1, 1972—some 20 days after June 10, 1972, when the Cadillac was seized—and Section 3 of that Chapter provided that it should not apply to any violation committed before its effective date.

We have held that the word "owner" used in the comparable provisions of the forfeiture statutes in effect prior to July 1, 1970, was intended by the General Assembly to include conditional vendors. *Commercial Credit Corp. v. State,* 258 Md. 192, 265 A. 2d 748 (1970). Inasmuch as the same word "owner" is used in the forfeiture provisions of Chapter 403 of the Acts of 1970, as was used in the prior legislation, we are of the opinion that a conditional vendor is also included within the meaning of that word so that Lumar is entitled as owner of the Cadillac to contend, as it does, that it has established that the act of Mrs. Westcott in violation of the controlled dangerous substances statutes resulted in the Cadillac being unlawfully in her possession in violation of the Laws of Maryland, as provided in Art. 27, § 297 (a) (4) (b) already set out in relevant part.

We considered this provision in *Prince George's County v. Blue Bird Cab,* 263 Md. 655, 284 A. 2d 203 (1971) in which we sustained the forfeiture in that case, holding, *inter alia,* that the breach of a provision of a lease between the cab company and the tenant of the cab involved did not result in a possession by the tenant in violation of the criminal laws of the United States or of this State so that the provisions of § 297 (a) (4) (b) did not prevent the forfeiture. Judge Digges, for the Court, in the opinion in *Blue Bird* set forth a comprehensive and careful review of the development of the law generally relating to forfeiture, pointing out that such laws are harsh, are grounded upon the legal fiction that an inanimate object can be guilty of a crime (the historical concept of deodand) and that the innocence of the owner is of no consequence, unless so provided by the applicable legislation.

In the present case, Lumar contends that (1) the possession of Mrs. Westcott was an unlawful possession in violation of the Laws of Maryland in that her deliberate use of an alias "Delores Jada" was intended to prevent Lumar from ascertaining that she had a prior narcotic conviction under the name of Lucille Westcott, her more normally used name, which resulted in the common law offense of larceny by trick and the statutory offense of obtaining a chattel by a false pretense as set forth in Art. 27, § 141 or (2) that Art. 27, § 297 denied Lumar due process of law for various reasons contrary to the provisions of Article 23 of the Declaration of Rights in the Maryland Constitution and of the Fourteenth Amendment to the Federal Constitution.

In regard to the issues of constitutionality, we are of the opinion that our recent decision in *Prince George's County v. One (1) 1969 Opel,* 267 Md. 491, 298 A. 2d 168 (1973) is dispositive of those issues adversely to the contentions of Lumar.

In regard to the issue of the alleged unlawful possession of Lucille Westcott in violation of the criminal laws of this State, we have concluded that the record in the

present case does not contain sufficient facts to enable us to decide this issue. Lumar forcefully contends that the use of her alias "Delores Jada" was a deliberate attempt to prevent discovery by Lumar of her prior conviction for violation of the narcotic laws under her name, Lucille Westcott. Hence, Lumar argues this has resulted in larceny by trick or obtaining the Cadillac by a false pretense in violation of the criminal laws of this State. On the other hand, it may be argued that, inasmuch as Mrs. Westcott used the alias "Delores Jada" as the name in which she acquired her home property and under which she was employed as a beauty stylist, she intended to give full financial information to Lumar rather than to suppress the narcotic violation. The statute is too harsh and the forfeiture too substantial for us to seek to decide this issue upon so sparse a record and we will remand the case to the lower court without affirmance or reversal pursuant to Maryland Rule 871 in order that additional testimony by way of testimony or deposition by Mrs. Westcott or otherwise may be introduced, casting more light upon the issue of unlawful possession of the Cadillac. This action by us is not inconsistent with the present policy of the General Assembly to liberalize the provisions of § 297 in favor of innocent owners of motor vehicles as set forth in Chapter 659 of the Laws of 1972.

> *Case remanded to the Baltimore City Court without affirmance or reversal pursuant to Maryland Rule 871 for further proceedings as set forth in this opinion; the costs in the lower court and in this Court to abide the final result in the case.*