508 A.2d 503

**ONE 1983 CHEVROLET VAN SERIAL NO. IGCCG15D8D104615**

**v.**

**STATE of Maryland.**

**No. 1067, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

May 12, 1986.

Howard Margulies (Donald Daneman, P.A., on brief), Baltimore, for appellant.

Ann E. Singleton, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Kurt L. Schmoke, State's Atty. for Baltimore City and Andrea Smith, Asst. State's Atty. for Baltimore City, on brief), Baltimore, for appellee.

Argued before WEANT, GARRITY and ALPERT, JJ.

GARRITY, Judge.

The owner of a forfeited vehicle, who had loaned the subject van to a known drug abuser, contends that the lower court improperly prevented him from repurchasing his van at the ensuing "commercially reasonable" sale. Although the court found that the owner knew of the probable use of the van to transport drugs, the owner also argues that the forfeiture was improper.

*Facts*

On December 17, 1984, Thomas Goodson loaned his 1983 Chevrolet van to Angela Forbes. While Forbes was driving the vehicle, two Baltimore City police officers stopped her pursuant to two outstanding warrants for her arrest on drug charges. In the process of making the arrest, one officer saw, in plain view, illicit drugs on the console of the van and commenced a search of the vehicle. He found

a glass vial containing cocaine;

a cloth case containing a mirror, a razor, a straw, and cocaine;

a rolled-up dollar bill with cocaine residue;

a plastic case containing phencyclidine (PCP);

a plastic tray with two containers, one of which contained PCP; and

several clear plastic bags under the seat in the rear of the van.

The police took possession of the contraband and notified Goodson that his van had been seized.

The State petitioned the Circuit Court for Baltimore City to order forfeiture of the van, alleging that Goodson or his agents or both had used or intended to use the motor vehicle in an unlawful manner by transporting cocaine, phencyclidine and marijuana. Following a hearing, the court ordered that the van be forfeited and directed that it be sold in a "commercially reasonable manner" by the secured party. The court specifically restricted the secured party (Baltimore County Employees' Credit Union) from reselling the van to Goodson. After the court denied Goodson's motion to alter, amend, or revise the judgment, Goodson appealed to this court. Before us, Goodson argues, in essence, that:

I. The evidence was not legally sufficient to support the forfeiture.

II. The trial court erred in preventing the appellant from repurchasing the van at the forfeiture sale.

## I. *Sufficiency of Evidence*

The appellant's first contention warrants but brief comment. The main thrust of Goodson's argument is that he was unaware that illicit drugs were being transported in the van. Thus, the court erred in finding that forfeiture of the vehicle was warranted.

Section 297(a)(4) makes "subject to forfeiture":

"All conveyances including aircraft, vehicles or vessels, which are used, or intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt,

possession, or concealment of property described in paragraph (1) or (2) of this subsection. . . ."

The appellant is attempting to prevent the forfeiture, however, by showing that he fits within the exception spelled out by (a)(4)(iii):

"(iii) No conveyance shall be forfeited under the provisions of this section to the extent of the interest of any owner of the conveyance who neither knew nor should have known that the conveyance was used or was to be used in violation of this subtitle."

■ As forfeiture in Maryland is a civil *in rem* proceeding, the standard of proof necessary to sustain such action by the State is that of mere preponderance of evidence rather than proof beyond a reasonable doubt. *Prince George's County v. Blue Bird Cab Company, Inc.*, 263 Md. 655, 659, 284 A.2d 203 (1971).

■ The trial judge, in conducting his review of evidence in light of the applicable standards,[1] found that Goodson was not without knowledge of the likelihood that illicit drugs would be transported in his van. The evidence was that Goodson and Forbes were close friends and that Goodson knew of his friend's use of narcotics and of the outstanding warrants against her on drug charges. Goodson, in fact, testified that he had loaned Forbes the van on the day of the arrest so that she could acquire the proper forms to gain entry into a local drug rehabilitation program. Based on this evidence, we cannot say that the trial judge was clearly erroneous in finding that Goodson had knowledge that Forbes would use his van in violation of the law regarding controlled dangerous substances.

## II. *Forfeiture Sale Conducted in "Commercially Reasonable Manner"*

■ Until amended in 1984, the statute authorized that the State sell a forfeited vehicle at a public auction. *Di-*

---

1. For discussion of applicable standards, *see State v. One 1982 Plymouth,* 67 Md.App. 310, 507 A.2d 633 (1986).

*rector of Finance v. Cole,* 296 Md. 607, 465 A.2d 450 (1983). As amended, the statute now provides in pertinent part:

(ii) If the court determines that the forfeited motor vehicle is subject to a bona fide recorded security interest created without the knowledge that the motor vehicle was being, or was to be used in violation of this subtitle, the court shall order that the motor vehicle be released within 5 days to the secured party of record.

(iii) The secured party shall sell the motor vehicle in a *commercially reasonable manner.* (Emphasis added).

Art. 27, § 297(j)(2)(ii) and (iii). At the forfeiture proceeding, the judge concluded that the statute was ambiguous. While inviting the Legislature to "look carefully" at its language, he decided that, to preserve the legislative intent of the statute, Goodson would necessarily need to be precluded from repurchasing the van. By such preclusion, the judge believed, he was averting a potential "revolving door" of lenders for people in Goodson's situation.

Goodson does not dispute that the Baltimore County Employees' Federal Credit Union, as holder of a bona fide recorded security interest in the van, may conduct a "commercially reasonable" sale. Goodson does, however, forcefully argue his right to participate in such sale as a bidder. He contends that his ability to repurchase is in direct harmony with the very purpose of the legislative amendment. He posits that its purpose is to protect the interest of secured parties by allowing recoupment of loan deficiencies through a forfeiture sale conducted in a "commercially reasonable manner."

In argument on appeal, the State observes that the Legislature provided in § 297(*l*) of the Act that "[a]ny sale ordered pursuant to this section shall be made for cash and vest in the purchaser a clear and absolute title to the motor vehicle that is sold." The State contends that this and related provisions of the statute

indicate a strong legislative intent that, upon a finding that an automobile has been used in drug trafficking in

Maryland, the registered owner loses all property rights in the automobile forever. The total loss of the property right, while a harsh effect, is exactly the one intended by the Legislature.... The intent of the Legislature would be totally thwarted if the owner were allowed to repurchase the car from the secured party. It was not designed as a debt clearing process....

The focus of our attention in the matter *sub judice* involves the Legislature's use of the phrase "commercially reasonable manner" in the context of how a secured party must conduct a forfeiture sale. Under the doctrine of *pari materia*, we may look to the meaning attributed to this phrase in other statutes which deal with similar subjects. *Willis v. State*, 302 Md. 363 at 375, 488 A.2d 171; *Kline v. Fuller*, 64 Md.App. 375, 381, 496 A.2d 325 (1985). This language is identical to that used in the Uniform Commercial Code, adopted by the General Assembly and appearing in the Commercial Law Article of the Maryland Code.

In the Commercial Law Article, the term "commercially reasonable" pertains to the sale of goods held by a secured party as collateral for a loan. When the debtor defaults on the loan, the secured party may sell the collateral and apply the proceeds of the sale against the indebtedness. C.L. § 9–504. If the sale is conducted in a "commercially reasonable manner," the secured party is protected against claims by the debtor that the secured party failed to acquire the full value for the goods sold. C.L. § 9–507(1) and (2). The section defines "commercially reasonable" as "in the usual manner in any recognized market ... [or] at the price current in such market at the time of sale ... [or] sold in conformity with reasonable commercial practices among dealers in the type of property sold." C.L. § 9–507(2).

A general view of the commercial law statute thus reveals that the term "commercially reasonable" sale identifies the proper conduct of the seller. Contrary to the view taken by the lower court, the term does not operate to proscribe the sale of the goods to the defaulting party. *Cf.,*

*Maryland National Bank v. Wathen,* 288 Md. 119, 414
A.2d 1261 (1980) (construing C.L. § 9–504 to require seller
to notify debtor of pending sale of collateral); *Harris v.
Bower,* 266 Md. 579, 295 A.2d 870 (1972) (holding that sale
of debtor's boat was not made in commercially reasonable
manner). Indeed, the Commercial Law Article provides for
redemption of the goods by the debtor upon the tendering
of all obligations secured by the collateral, along with
consequential expenses, prior to the secured party's disposi-
tion of the collateral. C.L. § 9–506.

Moreover, contrary to the State's contention, there is
nothing in § 297 to indicate that the forfeiture proceeding
"forever" precludes eventual repossession by the owner of
the vehicle. Indeed, one subsection provides for the owner
of the vehicle, after it has been seized, to regain possession
of the vehicle upon the presentation of a bond to the clerk
of the court for the appraised value of the vehicle plus
related costs.[2]

Although the goal of the statute is to discourage owners
of vehicles from involving their conveyances in drug traf-
ficking, the forfeiture proceeding itself is a civil *in rem*
action against the offending inanimate object. *Prince*

---

2. If the owner of the seized motor vehicle desires to obtain possession
thereof before the hearing on the petition filed against the vehicle,
the clerk of the court where the petition is filed shall have an
appraisal made by the sheriff of the county or city in which the
court is located. The sheriff shall promptly inspect and render an
appraisal of the value of the vehicle and return the appraisal, in
writing, under oath, to the clerk of the court in which the proceed-
ings are pending. *Upon the filing of the appraisal, the owner may
give bond payable to the State of Maryland, in an amount equal to
the appraised value of the vehicle plus court costs which may accrue,
with security to be approved by the clerk, and conditioned for
performance on the final judgment of the court after the hearing on
the petition,* the court directs that the motor vehicle or such interest
or equity as the owner may have therein, be forfeited, judgment
may thereupon be entered against the obligors on the bond for the
penalty thereof, without further or other proceeding, to be dis-
charged by the payment of the appraised value of the vehicle so
seized and forfeited and costs, upon which judgment execution may
issue. (Emphasis added).
Art. 27, § 297(i).

*George's County v. Blue Bird Cab Company, Inc.,* 263 Md. 655, 284 A.2d 203 (1971); *One 1983 Toyota v. State,* 63 Md.App. 208, 492 A.2d 643 (1985). In keeping with that principle, the statute in question does not mandate punishment directly against the owner of the vehicle.

We believe that the legislative purpose in enacting subsection j, providing for an innocent secured party to sell the forfeited vehicle in a commercially reasonable manner, was clearly to protect the interests of the secured party. Allowing the repurchase by a former owner of an involved vehicle, or his purchase of any other vehicle for that matter, neither defeats this particular legislative purpose nor the general goal of the statute governing forfeiture proceedings. Furthermore, repurchase provides benefits to both the secured party and the State. For the secured party, the repurchase may amount to the accelerated payment of the indebtedness. Even if the eventual sales price does not equal the amount of indebtedness, the sale itself does not extinguish the loan contract between the secured party and the vehicle's former owner, who remains liable for any deficiency. The State also benefits by recovering various costs.[3]

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART.

CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION.

COSTS TO BE DIVIDED EQUALLY.

---

**3.** The statute provides for distribution of the proceeds of the sale as follows:
1. To the court costs of the forfeiture proceeding;
2. To the balance due the secured party including all reasonable costs incident to the sale;
3. To payment of all other expenses of the proceedings for forfeiture including expenses of seizure, or maintenance of custody; and
4. To the general funds of the State or the political subdivision that seized the motor vehicle.

Art. 27, § 297(j)(2)(iv).