524 A.2d 51

**STATE of Maryland**

v.

**ONE 1983 CHEVROLET VAN SERIAL NO. 1GCCG15D8D 104615.**

**No. 96, Sept. Term, 1986.**

Court of Appeals of Maryland.

April 20, 1987.

**328**

Anne E. Singleton, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., on the brief), Baltimore, for appellant.

Frederick Kobb (Donald Daneman, P.A., on the brief), Baltimore, for appellee.

Argued before ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ., and MARVIN H. SMITH, and CHARLES E. ORTH, Jr., Associate Judges of the Court of Appeals of Maryland (retired), specially assigned.

CHARLES E. ORTH, Jr., Judge, Specially Assigned.

## I

### A

During the early part of the 1984 session of the General Assembly of Maryland a member of the Senate requested the Department of Legislative Reference to draft legislation to the effect that

when a motor vehicle is confiscated by police re drugs, car should go to any lienholder to satisfy lien if they agree not to sell it back to (or give back to) pusher. (Request Form, Bill File (1984) SB 589.)

He designated the "Short Title" as "Confiscation of Motor Vehicles," and the "Subject" as "Art. 27, § 297" of the Maryland Code.

Pursuant to the request, Senate Bill 589 was launched into the legislative stream. Steered by the Senate Judicial Proceedings Committee, it began its journey through the legislative processes. It sailed by committee hearings, survived fiscal notes, and, with amendments, passed the required readings. In due time, as Acts 1984, ch. 549, it was approved by the Legislature and enacted into law effective 1 July 1984.

### B

With the enactment of the "Comprehensive Drug Abuse Prevention and Control Act of 1970" by the Congress of the United States it became necessary that the states update and revise their criminal drug laws so that uniformity would be achieved between the laws of the several states and those of the federal government. Virtually all of the states, including Maryland, did so. *See* 9 Uniform Laws Annotated 187–194 (Master Ed.) and 1986 Supplementary Pamphlet thereto 123–124. By Acts 1970, ch. 403, Maryland repealed its Uniform Narcotic Drug Act and enacted in lieu thereof the Maryland Controlled Dangerous Substances Act, Md.Code (1957, 1982 Repl.Vol.) Art. 27, §§ 276–302 (the

Act). The Act contained provisions for seizures and forfeitures. Section 297. Property subject to forfeiture included "[a]ll conveyances ... which are used ... to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment [of dangerous substances] ..." with the exception, under certain circumstances, with respect to common carriers and stolen conveyances. Section 297(a)(4). Any property subject to forfeiture could be seized as set out in subsection (b), and it was not repleviable, subsection (c). Subsection (d) gave the political subdivision in which the property was seized, or the State, if it seized the property, the authority, among other methods of disposition, to "[s]ell any forfeited property which is not required to be destroyed by law and which is not harmful to the public, provided that the proceeds be disposed of for payment of all proper expenses of the proceedings for forfeiture and sale, including expenses of seizure, maintenance of custody, advertising and court costs." The statute did not designate how the property was to be sold.

The Act was amended by Acts 1972, ch. 659 by adding to § 297 subsections (f)–(w) which specifically concerned motor vehicles. Subsection (f) established the standards to be followed in exercising the authority to seize a motor vehicle. Generally speaking, it could be seized and its forfeiture recommended to the State's Attorney when it was connected with controlled dangerous substances, subsection (f)(1), with three narrow exceptions, subsection (f)(2)(i)–(iii). Subsection (g) provided that the Administrator of Motor Vehicles, upon due notice, certify to the State's Attorney the name and address of the owner of the seized vehicle and declared that the term "owner" shall include lienholder. Subsections (h)–(p) established procedures to be followed for a judicial determination of forfeiture. Subsection (q) commanded that "[i]f after a full hearing the court decides that the vehicle was used in violation of [the Act], or that the owner knew or should have known that the motor vehicle was being, or was to be so used, the court shall

order that the motor vehicle be forfeited to the State." However,

> [i]f the court shall determine that the forfeited motor vehicle be subject to a bona fide recorded security interest created without the knowledge that the motor vehicle was being, or was to be, used in violation of [the Act], the court shall order that the motor vehicle be sold by the State. Subsection (r).

Subsection (t) required that the sale be at public auction held pursuant to certain specifications. The disposition of the proceeds of the sale was provided in subsection (u). The payment of all expenses as set out in the 1970 Act still had priority, but after those expenses had been satisfied the proceeds were to be applied next "to payment of the balance due on a lien (if any)," and "[t]he balance (if any) shall be deposited in the general funds of the State." Subsection (w) prescribed that the sale "shall be made for cash and vest in the purchaser a clear and absolute title to the motor vehicle sold." For the first time in the Maryland Controlled Dangerous Substances Act, the Legislature recognized the interest of an innocent party with a security interest in a motor vehicle seized and forfeited under the Act.

### C

Automobile dealers were not happy with the 1972 law, and they made their dissatisfaction known. They experienced problems in receiving payments for outstanding amounts on installment agreements when a vehicle had been seized by law enforcement authorities due to its use in connection with controlled dangerous substances crimes. They testified in the committee hearing that the current law provided inadequate notice so that they frequently did not learn of the seizure until months after its occurrence. They asserted that sometimes the State was authorized to hold the vehicle for over a year in police lots where it was damaged by thieves and vandals. They complained that the current law provided that proceeds from forfeited vehicles go to pay government costs for seizure and forfeiture

before secured interest debts, and this frequently left insufficient money to pay off the secured interest. They called for legislation to rectify these hardships. See Summary of Committee Report, Senate Judicial Proceedings Committee, prepared by the Department of Legislative Reference, SB 589, 1984, at 3.

Senate Bill 589 was in answer to their call. The legislative intent was

> to provide expedited forfeiture procedures for motor vehicles seized in connection with drug arrests and to provide that the holder of a recorded secured interest in the vehicle shall receive payment before any money goes to pay governmental units for the seizure and forfeiture costs. Summary of Committee Report at 4.

The purpose of the bill was

> to alleviate the hardship worked on dealerships with a secured interest in a motor vehicle which has been seized and forfeited in connection with drug arrests. Id.[1]

The Legislature fulfilled its intent and purpose by creating an entirely new scheme for the disposition of a motor vehicle forfeited by reason of its connection with drug crimes. It established this scheme by major changes in Md.Code (1957, 1982 Repl.Vol. 1986 Cum.Supp.) Art. 27, § 297, by significant additions to Md.Code (1975, 1983 Repl. Vol., 1986 Cum.Supp.) §§ 12–624, 12–625, and 12–626 of the Commercial Law Article, and by borrowing the term "commercially reasonable" from the Maryland Uniform Commercial Code, Md.Code (1975, 1986 Cum.Supp.) §§ 1–101 to 10–104 of the Commercial Law Article (UCC). As stated in the Summary of Committee Report:

> This bill repeals most of the current forfeiture procedures and establishes new petition and answer requirements, new notice requirements, new deadlines for all procedures, new methods for sale and release of the vehicle

---

1. The Summary of Committee Report may be regarded as "especially authoritative" since it is signed by the Committee Chair. See M. Miller, *Ghost Hunting, Finding Legislative Intent in Maryland* 6 (1984).

and a new priority of distribution of the proceeds from the sale of the vehicle. *Id.* at 2.

Acts 1984, ch. 549 announced that it was for the purpose of altering the kinds of property subject to forfeiture with no property right remaining in them; requiring the chief law enforcement officer to determine the owner and any secured party of a motor vehicle before recommending forfeiture of a motor vehicle; requiring that the recommendation for forfeiture of a motor vehicle be made within a certain time; requiring copies of the recommendation for forfeiture of a motor vehicle to be sent to owners and secured parties; repealing certain requirements for forfeiture proceedings for motor vehicles; requiring the State's Attorney to surrender a motor vehicle that has been seized to the owner under certain circumstances; providing procedures for the State's Attorney when petitioning the court for forfeiture of a motor vehicle; providing procedures by which the owner may obtain possession of the vehicle by posting a certain bond; and generally relating to such bonds; requiring the court to release a motor vehicle when the court determines the motor vehicle should not be forfeited; requiring certain procedures when the court determines a motor vehicle should be forfeited; providing for the release of a motor vehicle to the holder of a security interest in certain circumstances; altering the grounds on which a holder may repossess certain goods sold under an agreement; altering the conditions under which a buyer loses the right of redemption of repossessed goods; altering provisions for application of proceeds of repossessed goods that are resold. . . .

The act accomplished these purposes. The question is what is its impact on the case before us?

## II

This appeal stems from a petition filed by the State in the Circuit Court for Baltimore City for the forfeiture of a motor vehicle as authorized by the new scheme. Md.Code,

Art. 27, § 297(h). The vehicle, a customized van, was seized by the police during the course of the arrest of the driver when controlled dangerous substances and paraphernalia were found on her person and in the van. The then registered owner of the van, Thomas Dean Goodson, was not present. As the petition gave rise to an *in rem* civil action, the State proceeded against the van and included the owner, a secured party, "and any other person claiming an interest in the vehicle." The action culminated in the circuit court by an order which the court refused to revise or amend. The order provided that the van be forfeited, that it be released to the secured party, and that it be sold by the secured party in a commercially reasonable manner,

> but not to the person, or persons, who was the registered owner prior to this hearing, or to any agent of the registered owner, or owners, or to any other person to whom such sale would defeat the purposes of this statute.

This limitation was apparently at the suggestion of the State. The order spelled out how the proceeds of the sale were to be applied, required that the sale be in cash and vest in the purchaser a clear and absolute title to the van, and called for accountings. All of this purported to be in accordance with certain provisions of Md.Code, Art. 27, § 297.

Goodson was not happy with the order and sought relief by way of direct appeal to the Court of Special Appeals. He contended that there was not sufficient evidence to support the forfeiture and that the proviso in the order prohibiting the sale of the van to him was unlawful. He lost on the first issue and won on the second. The Court of Special Appeals affirmed the order with respect to the forfeiture and reversed that part of the order limiting who may purchase the vehicle. *1983 Chevrolet Van v. State*, 67 Md.App. 485, 508 A.2d 503 (1986). The State took umbrage at the wiping out of its victory below with respect to the sale, and after its motion for reconsideration was denied, looked to this Court. It asked us to issue a writ of certiorari to decide the sole question

[w]hether the trial court erred in placing a restriction in its Order of forfeiture that the secured party could sell the automobile in a commercially reasonable manner but not to the person who was the registered owner prior to the hearing.

We issued the writ.

As the case stands before us the only issue is the propriety of that part of the order of the circuit court which forbids the former registered owner to buy the van. Goodson did not file a cross-petition for a writ of certiorari and has apparently become reconciled to the forfeiture and sale of the vehicle. This acceptance of the validity of the forfeiture carries with it that Goodson knew or should have known that the van was used or was to be used in violation of the Controlled Dangerous Substances Act. Art. 27, § 297(a)(4)(iii). The acceptance of the propriety of a sale by the secured party establishes that the van was "subject to a bona fide recorded security interest created without the knowledge that the motor vehicle was being, or was to be used in violation of [the Controlled Dangerous Substances Act]." Art. 27, § 297(j)(2)(ii). The question is whether the restriction on the sale of the forfeited vehicle imposed by the circuit court is authorized by law.

## III

■ Under the present scheme for the disposition of a motor vehicle forfeited by reason of its use in violations of the drug laws,

[i]f ... the court determines that the forfeited motor vehicle is subject to a bona fide recorded security interest created without the knowledge that the motor vehicle was being, or was to be used in violation of [the Controlled Dangerous Substances Act], the court shall order that the motor vehicle be released within 5 days to the secured party of record. Art. 27, § 297(j)(2)(ii).

Whereupon, "[t]he secured party shall sell the motor vehicle in a commercially reasonable manner." Art. 27, § 297(j)(2)(iii).

The circuit court did not address the propriety of its restriction on the sale in the frame of reference of "commercially reasonable." It thought that the statute was ambiguous on the matter, but decided that to preserve the legislative intent the former owner must necessarily be precluded from purchasing the vehicle. Otherwise, it explained, "All that would happen is that the owner of the vehicle would have had his lien paid off. It's sort of a debt clearing process, rather than a forfeiture," or, in other words, "just a revolving door." The court saw "no purpose served by the statute by just a technical forfeiture which has no real meaning in the commercial sense." It believed that the forfeiture law was "designed to say to those whose vehicles are used, with their knowledge ..., illegally in drug trafficking that here is the price you are going to pay," that is, the car is lost as far as the former owner is concerned.

On the other hand, the Court of Special Appeals found that the requirement that the sale be in a commercially reasonable manner did not proscribe a sale to the former owner. *1983 Chevrolet Van v. State*, 67 Md. at 490–491, 508 A.2d 503. It called on the UCC to support its view. *Id.* We look at the term "commercially reasonable" to see if it casts light on the issue whether the forfeited vehicles may be sold by the secured party to the former owner.

It is plain that the Legislature attempted to achieve its intent in enacting Acts 1984, ch. 549 by harmonizing the motor vehicle forfeiture provisions of Art. 27, § 297 and the default, repossession and redemption provisions regarding Retail Installment Sales in the Commercial Law Article. As we shall see, it effectively meshed the statutes to that end by its various amendments to the then current law. It is a reasonable assumption, therefore, that when it looked for a manner for the sale of a forfeited motor vehicle subject to a security interest, it adopted a method which had been tested by its use in the sale of collateral when a debtor is in default under a security agreement pursuant to the Uniform Commercial Code sections of the Commercial Law

Article, namely the sale must be in a commercially reasonable manner. Acts 1984, ch. 549 did not define the term, but ample clues to its meaning are provided in the UCC. Like the sale of a forfeited motor vehicle, the default sale under the UCC is by the secured party. Section 9–504(1). "Disposition of the collateral may be by public or private proceedings ... but every aspect of the disposition including the method, manner, time, place and terms must be *commercially reasonable.*" Section 9–504(3) (emphasis supplied). Comment 1 to § 9–504 states:

> Although public sale is recognized, it is hoped that private sale will be encouraged where, as is frequently the case, private sale through commercial channels will result in higher realization on collateral for the benefit of all parties. The only restriction placed on the secured party's method of disposition is that it must be commercially reasonable.

Comment 6 emphasizes that the policy adopted is "to encourage disposition by private sale through regular commercial channels." It warns, however, that under § 9–504(3) "every aspect of the sale or other disposition of the collateral must be commercially reasonable; this specifically includes method, manner, time, place and terms." Comment 1 notes that § 9–507(2) "states some tests as to what is 'commercially reasonable.' "[2]

The tests referred to in the Comment are these:

> The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner. If the secured party either

---

**2.** The term "commercially reasonable" also appears in the UCC, Md. Code (1975, 1986 Cum.Supp.) § 9–504(1) of the Commercial Law Article:

> A secured party after default may sell, lease or otherwise dispose of any or all of the collateral in its then condition or following any *commercially reasonable* preparation or processing. (emphasis added).

sells the collateral in the usual manner in any recognized market therefor or if he sells at the price current in such market at the time of his sale or if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold he has sold in a commercially reasonable manner.... A disposition which has been approved in any judicial proceeding or by any bona fide creditors' committee or representative of creditors shall conclusively be deemed to be commercially reasonable, but this sentence does not indicate that any such approval must be obtained in any case nor does it indicate that any disposition not so approved is not commercially reasonable. Section 9–507 (2).

Comment 2 to § 9–507 stressed that "it is of great importance to make clear what types of disposition are to be considered commercially reasonable...." The Comment explains that subsection (2) "states rules to assist in the determination, and provides for ... advance approval in appropriate situations." It elaborates on those rules:

One recognized method of disposing of repossessed collateral is for the secured party to sell the collateral to or through a dealer—a method which in the long run may realize better average returns since the secured party does not usually maintain his own facilities for making such sales. Such a method of sale, fairly conducted, is recognized as commercially reasonable under the second sentence of subsection (2). However, none of the specific methods of disposition set forth in subsection (2) is to be regarded as either required or exclusive, provided only that the disposition made or about to be made by the secured party is commercially reasonable.

Whether a sale is made in a commercially reasonable manner must also be viewed in light of the admonition in § 1–203 that "[e]very ... duty within [the Maryland Uniform Commercial Code] imposes an obligation of good faith in its performance...." " 'Good faith' means honesty in fact in the conduct or transaction concerned." Section

1–201(19). *See Harris v. Bower,* 266 Md. 579, 588, 295 A.2d 870 (1972).

We read no more into "commercially reasonable" than did the Court of Special Appeals. We are satisfied that it has the same concept in Art. 27, § 297 as it has in the UCC. As used, explained, discussed and applied in the UCC, there is no indication whatsoever, or even suggestion, that "commercially reasonable" prohibits a sale to the former owner. Nor is there anything in Art. 27, § 297 that derogates the view that the former owner may buy the forfeited vehicle. We hold that if the sale of the motor vehicle here is otherwise commercially reasonable, its sale to Goodson would not render the transaction commercially unreasonable.[3]

## IV

■ We have found nothing in § 297 of Art. 27 prohibiting the sale of a forfeited vehicle to its former owner. The only restriction imposed by § 297 in this frame of reference is that the sale be "in a commercially reasonable manner." And we have determined that the sale to the former owner is not prohibited by that requirement. Therefore, unless some other statute provides to the contrary, there is no impediment to the purchase of the vehicle by the former owner.

It will be recalled that the Senator requesting that the Department of Legislative Reference draft legislation concerning forfeited motor vehicles desired that the vehicle not be released to the secured party unless that party agreed not to sell it back to the "pusher." SB 589 as originally drafted contained a proviso to that effect. The vehicle was to be returned to the innocent holder of a bona fide security interest

---

3. We note that the sale of the forfeited motor vehicle by the secured party "shall be made for cash...." Md.Code (1957, 1982 Repl.Vol., 1986 Cum.Supp.) Art. 27, § 297(*l* ).

if the secured party signs a statement agreeing not to sell the motor vehicle to the defendant, or an agent of the defendant.

See Bill Analysis prepared by the Department of Legislative Reference 2 (1984). That proviso was stricken from the bill, and nothing more appeared about a sale to "the defendant" or his agent. The secured party's obligation was only that the sale be in a commercially reasonable manner. This, however, left loose ends. The vehicle had been forfeited because it had been used in violations of the Controlled Dangerous Substances Act with the knowledge of the owner. We said in *Pr. George's Co. v. Blue Bird Cab*, 263 Md. 655, 284 A.2d 203 (1971), that the purpose of the forfeiture provision

> is to attempt not only to curtail drug traffic in this state, but to discourage such a blight from continuing in the future. Historically, decisive action has been required to prevent any plague from spreading.... [T]he Legislature has clearly indicated its purpose for this act. It is to control the proliferation of dangerous drugs in our society and it is a noble purpose but an arduous task. *Id.* at 662, 284 A.2d 203.

See the legislative declaration of the purpose of the Controlled Dangerous Substances law in § 276(a) of Art. 27. The hardships which prompted automobile dealers to seek remedial legislation in 1984 arose in large part because many of the vehicles forfeited were subject to an installment sale agreement.[4] The owner of a vehicle subject to

---

4. "Installment sale agreement" means a contract for the retail sale of goods, negotiated or entered into in this State, under which:

(i) Part or all of the price is payable in one or more payments after the making of the contract; and

(ii) The seller takes collateral security or keeps a security interest in the goods sold. Md.Code (1975, 1983 Repl. Vol., 1986 Cum. Supp.) § 12–601(*l*)(1) of the Commercial Law Article. (Acts 1986, ch. 677, effective 1 July 1986, inserted "consumer" in the introductory language of paragraph (*l*).)

such an agreement had rights under Md.Code § 12–601 through § 12–631 of the Commercial Law Article (subtitle "Retail Installment Sales"). If permitted to stand, these rights would adversely affect the forfeiture provisions and thwart the purpose of the drug laws.

Under the Retail Installment Sales subtitle the holder had the right, on certain conditions, to repossess goods sold under an agreement if the buyer was in default in specified ways. Section 12–624. There was no right to repossess merely because the goods had been seized by the police. The buyer, moreover, had a right of redemption. Section 12–625 provided:

(a) *Holder to retain repossessed goods.*—For 15 days after the holder gives the notice required by § 12–624(d) of this subtitle, the holder shall retain any repossessed goods in the county where the goods were sold to the buyer or were repossessed.

(b) *Buyer may redeem goods repossessed.*—During the period provided for in subsection (a) of this section, the buyer may:

(1) Redeem and take possession of the goods; and

(2) Resume the performance of the agreement.

(c) *Requirements for redemption.*—To redeem the goods, the buyer shall:

(1) Render the amount due under the agreement at the time of redemption, without giving effect to any provision which allows acceleration of any installment otherwise payable after that time;

(2) Tender performance of any other promise for the breach of which the goods were repossessed; and

---

"Holder" means a person, including a seller and a sales finance company, entitled to enforce an agreement against a buyer. *Id.* § 12–601(k).

"Buyer" means a person who buys or leases goods under an installment sale agreement.... *Id.* § 12–601(c).

"Security interest" means an interest in personal property ... which secures payment or performance of an obligation. *Id.* § 12–601(r); Md.Code § 1–201(37) of the Commercial Law Article.

(3) If the discretionary notice provided for in § 12–624(c) of this subtitle was given, pay the actual and reasonable expenses of retaking and storing the goods.

(d) *Exception.*—This section does not apply if the buyer was guilty of fraudulent conduct, intentionally and wrongfully concealed, removed, damaged, or destroyed the goods, or attempted to do so, and the goods were repossessed because of that conduct.

Section 12–626 provided for a resale of the goods at public auction under certain circumstances; otherwise the goods could be sold at private sale. Subsections (a)–(d). Subsection (e)(2) prescribed the order in which the proceeds of the sale were to be applied:

(i) The actual and reasonable cost of the sale;

(ii) The actual and reasonable cost of retaking and storing the goods; and

(iii) The unpaid balance owing under the agreement at the time the goods are repossessed.

Subsection (e)(3) provided:

After application of the proceeds and deposit in accordance with paragraph (2) of this subsection, any remaining balance shall be paid to the buyer.

Subsection (e)(4) concerned the liability of the buyer in the event of a deficiency.

When the Legislature required that the sale of the forfeited vehicle be by the secured party and, in doing so, imposed no restriction on a resale to the former owner, it was aware that the liberal right of redemption provided by the Retail Installment Sales subtitle of the Commercial Law Article was obviously inconsistent with the intent and purpose of the forfeiture law. So, in addition to the changes in § 297 of Art. 27, it repealed and reenacted with amendments §§ 12–624(a), 12–625, and 12–626(e) of the Commercial Law Article. Paragraph (2) was added to § 12–624(a) to provide that the holder may repossess goods sold under an installment sale agreement if "the goods were seized by a police department, bureau, or force." Paragraph (2) was

appended to § 12–625(d) so that the redemption section did not apply if

> [T]he goods were seized by a police department, bureau, or force and the goods were repossessed because of that seizure, in which event, the buyer shall have no right to redeem or take possession, even if the buyer tenders payment of the entire balance due under the agreement.

Section 12–626(e)(3) had prescribed that after the costs of sale, the costs of retaking and storing the goods, and the unpaid balance on the agreement had been satisfied, the remaining proceeds were to be paid to the buyer. A proviso was inserted in paragraph 3 which declared that

> unless the sale occurred because of the seizure of the goods by a police department, bureau, or force, in which event the remaining balance shall be paid to the police department, bureau, or force that seized the goods, to be disposed of in accordance with the provisions of § 297 of article 27 of the code or any other law that applies to the seizure and forfeiture of the goods.[5]

When the Legislature jettisoned the requirement that the secured party agree not to sell the forfeited vehicle to the former owner and looked to the Commercial Law Article, its intent was plainly manifested by the words used in Acts 1984, ch. 549. We said in *Schweitzer v. Brewer*, 280 Md. 430, 438, 374 A.2d 347 (1977):

> The primary source from which we glean the legislative intent is the language of the statute itself. When the intent is expressed in clear and unambiguous language, this Court will carry it out, if no constitutional guarantees are impaired. Words are granted their ordinary signification so as to construe the statute according to the natural

---

5. Article 27, § 297 was amended to be consistent with this provision. There was added to the designations of property to be subject to forfeiture
> [t]he remaining balance of the proceeds of a sale by a holder of an installment sale agreement under § 12–626 of the Commercial Law Article of goods seized by a police department, bureau, or force, under this [Act]. Section 297(a)(8).

import of the language used without resorting to subtle or forced interpretations for the purpose of extending or limiting its operation.

The language used in the various amendments clearly reflected the legislative scheme. It is to permit an innocent secured party to repossess a vehicle seized by the police and require its release to that party for resale in a commercially reasonable manner. The usual rights of redemption, however, which are enjoyed by a buyer who suffers ordinary commercial repossession, are not available, nor may the buyer receive any part of the proceeds of the sale. The right to redeem may be quite valuable. If the buyer is permitted to redeem by simply bringing the payments current and paying costs, little has been lost. Even if the buyer is required to pay the balance due under the agreement, this may be considerably less than the value of the goods. But if the buyer is not permitted to redeem, he must compete with all other prospective purchasers and pay at least the forced sale value of the vehicle. The right to redeem, however, is separate and apart from the right to repurchase at a commercially reasonable sale, and the Legislature said nothing about the right of the former owner of a forfeited vehicle to repurchase it. It follows that when the Legislature precluded redemption by the owner of a goods repossessed by reason of its seizure by the police, it accomplished a purpose consistent with the intent of the motor vehicle forfeiture laws but did not prohibit repurchase by the former owner.

When the exception to the right of redemption was added to § 12–625 by subsection (d)(2),[6] it spoke in terms of the buyer having "no right to redeem or *take possession.*" (emphasis added). The emphasized words do not lend themselves to such a subtle or forced interpretation as to extend the operation of the exception to prohibit the repurchase of

---

**6.** Acts 1986, ch. 750 deleted former paragraph (1) and the paragraph (2) designation. The former paragraph (1) was added in a subsection (e).

the goods by the buyer. The inclusion of these words in this subsection was simply to track the words of subsection (b) in order to effect a complete exclusion of the right of redemption. Subsection (b) provided that the buyer could "[r]edeem and take possession of the goods." Subsection (d)(2) was added to provide that after forfeiture the buyer has no right to "redeem or take possession." Using the same words in the exclusion that had been used in the grant of the right was no more than good draftsmanship, and should not be given extraordinary significance.

## V

■ An installment sale agreement includes "[a] purchase money security agreement." Section 12–601 ($l$)(2)(ii) of the Retail Installment Sales subtitle of the Commercial Law Article. We glean from the record that the security interest in the case before us was by way of a purchase money security agreement. The records of the Department of Transportation show that the forfeited vehicle was new when Goodson purchased it from a dealer, that a chattel lien was impressed on it on the day of sale, running from Goodson to the secured party, and that Goodson's application for title reflected the lien to the secured party.[7] We point out that under the Retail Installment Sales subtitle, " 'Goods' means all tangible personal property that has a cash price of $25,000 or less." Section 12–601(j)(1). The record here shows that the purchase price of the van was $8,925.[8] Thus the rights and obligations of Goodson and the secured party are governed by the provisions of the Retail Installment Sales subtitle of the Commercial Law Article as well as by the provisions of Art. 27, § 297. In the light of all we have said, Goodson may not redeem the van, but he may repurchase it, for cash, at the sale by the

---

7. The security agreement is not included in the record before us.

8. The lien impressed on the vehicle at the time of its purchase was in the amount of $7,848.15. The sum of $8,046.95 was owed under the security agreement at the time of the seizure.

secured party provided the sale is conducted in a commer- . cially reasonable manner within the meaning of that term in the UCC. If he is successful in buying it, he shall be vested with "a clear and absolute title" to it. Art. 27, § 297 (*l*).

The State suggests that if Goodson purchases the vehicle it may again be seized from him because of its prior use in violation of the narcotic laws. It points to Art. 27, § 297(b)(1)(ii). Subsection (b)(1) provides that "[a]ny property subject to forfeiture" may be seized without court process when—

> (ii) The property *subject to seizure* has been the subject of a prior judgment in favor of the State in a ... forfeiture proceeding under this subheading (emphasis added).

The State's argument is not even sophistic; it is fallacious on its face. The provision obviously applies only when the propriety of the forfeiture has been duly determined but the actual seizure has not taken place. It is in such event that the property may be seized without process issued by a court. But once the property has been seized and judicially forfeited, and sold pursuant to the law, giving the buyer "a clear and absolute title" to it, it may not be seized again for the misdeeds that permitted its seizure in the first place. The view advanced by the State would produce an absurd result, and statutes are not to be construed to that end. *See State v. Fabritz,* 276 Md. 416, 421, 348 A.2d 275 (1975), *cert. denied,* 425 U.S. 942, 96 S.Ct. 1680, 48 L.Ed.2d 185 (1976). The State concedes that "[o]bviously [it] would not seek to re-seize a forfeited vehicle once it has been sold to a bona fide purchaser who obtains clear title under § 297(*l*)." We have decided that Goodson is not prohibited from purchasing the van. If he does so at a sale conducted in a commercially reasonable manner, he would be a bona fide purchaser who obtains clear title. The van would not then be subject to seizure and forfeiture in the absence of fresh reasons.

The question presented to us was

[w]hether the trial court erred in placing a restriction in its Order of forfeiture that the secured party could sell the automobile in a commercially reasonable manner but not to the person who was the registered owner prior to the hearing.

The answer is that the trial court properly required that the van be sold in a commercially reasonable manner, but erred in precluding the sale to the person who was the registered owner prior to the hearing.

*JUDGMENTS OF THE COURT OF SPECIAL AP-PEALS AFFIRMED.*

*COSTS TO BE PAID BY THE PETITIONER.*