519 A.2d 1327

**William C. EWACHIW, Jr.**

v.

**DIRECTOR OF FINANCE OF BALTIMORE CITY.**

**No. 637, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

Jan. 19, 1987.

Certiorari Denied June 4, 1987.

**60**

Lawrence A. Melfa, Towson, for appellant.

Suzanne A. Hutton, Asst. City Sol. (Benjamin L. Brown, City Sol. and William R. Phelan, Asst. City Sol. on the brief), Baltimore, for appellee.

Argued before MOYLAN, BLOOM, ROBERT M. BELL, JJ.

MOYLAN, Judge.

The Maryland General Assembly in 1970 [1] enacted a comprehensive statute designed to control trafficking in controlled dangerous substances. As part of its "full court press" against the illicit drug traffic, it provided for the forfeiture to the State of all money or currency found to have been used or intended for use in connection with the drug traffic. As we turn our appellate review to one such instance of forfeiture, it is helpful to begin with Md.Ann. Code, Art. 27, § 276 (1982 Repl.Vol. & 1986 Supp.), which sets out the purpose of the comprehensive law and provides guidelines for interpreting and construing that law. After declaring that the illicit drug traffic has "a substantial and detrimental effect on the health and general welfare of the people of the State of Maryland" and stating the purpose of the law "to prevent [this] abuse which results in a serious health problem to the individual and represents a serious danger to the welfare of the people of the State of Maryland," subsection (b) of that section provides:

"The provisions of this subheading shall be liberally interpreted and construed so as to effectuate its general purpose as stated hereinabove."

---

**1.** By Ch. 403 of the Acts of 1970, rewriting §§ 276–302 of Article 27.

With those interpretative guidelines firmly in mind, we turn to the case at hand. The appellant, William C. Ewachiw, Jr., was the resident of the premises at 818 South Streeper Street in Baltimore City, when that premises was searched on November 10, 1981, pursuant to a validly issued search and seizure warrant. The police found a wide variety of equipment and paraphernalia associated with both the use and manufacture of controlled dangerous substances. There was also seized a sum of $14,175 in cash. The appellee, the Director of Finance of Baltimore City, petitioned to have the cash forfeited under the specific provisions of Article 27, § 297(a)(6), which provides, in pertinent part:

"(a) *Property subject to forfeiture.*—The following shall be subject to forfeiture and no property right shall exist in them:

. . .

(6) All money, coin, or currency which has been used or intended for use in connection with the illegal manufacture, distribution, dispensing or possession of controlled dangerous substances or controlled paraphernalia. All money, coin, or currency which is found in close proximity to contraband controlled dangerous substances, controlled paraphernalia, or forfeitable records of the importation, manufacture, or distribution of controlled dangerous substances are presumed to be forfeitable under this paragraph. The burden of proof is upon a claimant of the property to rebut this presumption."

Following a full hearing in the Circuit Court for Baltimore City on September 6 and September 30, 1985, and January 24, 1986, Judge Milton B. Allen issued a Memorandum Opinion and Order on February 19, 1986, ordering the forfeiture. Upon this appeal from that decision, the appellant raises the following four contentions:

1. That the decision of Judge Allen that the cash was found in "close proximity" to the contraband drugs and/or paraphernalia was clearly erroneous;

2. That § 297(a)(6) as applied in this case was an unconstitutional deprivation of the due process of law guaranteed by the Fourteenth Amendment;

3. That the case should have been dismissed because of the failure of the appellee to prosecute within the required statutory period; and

4. That the appellee failed to allege and prove that the Petition for Forfeiture was filed within the 90–day period required by § 297(b)(4).

We turn our attention first to the fact finding of Judge Allen that the cash was, indeed, properly subject to forfeiture. What the appellant, in spinning his appellate argument about what the evidence reveals, stubbornly refuses to recognize is that, in assessing whether a trial judge's fact finding is clearly erroneous, we take that version of the facts most favorable to the State and, further, draw all inferences in favor of the State that can reasonably be drawn from those already favorable facts. Defense testimony, because it may be utterly disbelieved by the fact finder, is at this stage utterly discounted. Two such spurious arguments have been raised by the appellant here.

█   The evidence showed the appellant to be the lessee of 818 South Streeper Street. The appellant, to be sure, testified that he sublet the basement of his premises to others and that a wide variety of people had free access to his house, but the fact-finding trial judge was under no obligation to believe any of this self-serving testimony. The assessment of the legal sufficiency of the evidence will be made not simply on the basis of the appellant's being knowledgeable about and responsible for all illicit activities going on in his house but upon the basis of the appellant's being the sole and exclusive occupant of that house.

The appellant's testimony as to the source of the $14,175 in issue was not only capable, from our appellate point of view, of being utterly disbelieved but was actually disbelieved by Judge Allen. In his Memorandum Opinion and

Order, Judge Allen pointed out that the appellant's contention in this regard "carries little weight." Judge Allen found that, contrasted with the strong circumstantial case for the State, "Mr. Ewachiw's self-serving statements to the contrary strain the credulity of this Court."

The affirmative case for the State was a strong one. From the basement of 818 South Streeper Street, the police seized twelve nonconventional smoking pipes commonly used to abuse controlled dangerous substances such as marijuana and PCP, film canisters which are commonly used for distributing hashish and PCP, a hemostat, cigarette rolling papers, straws and pipe cleaners, glass bottles with residue, plastic vials with various types of suspected controlled dangerous substances, clear capsules, white tablets, hypodermic needles and a syringe, a burnt spoon with residue, rubber bands, other spoons with residue, a hot plate, a vacuum chamber, plastic bags with white powder, and a motor oil can with a clear liquid smelling like alcohol.

Moving up from the basement to the living room/dining room area, the police found straws with residue, green-brown seeds, bright green residue in a vial, a metal clamp glass beaker stopper, goggles, and Noxene paper. More significantly, they found metal chips of the type used as a filter in producing PCP. In addition, they found a Physicians' Desk Reference and a notebook with detailed instructions for manufacturing PCP.

As yet a further indication that this type of paraphernalia and equipment was overflowing the appellant's entire home, the police recovered from the kitchen a plastic bottle with residue, two jars of clear liquid, and a piece of plastic hose containing a clear liquid.

Various representative examples of the suspect substances and suspect residue were analyzed by the crime laboratory and were found to be marijuana, methamphetamine, phencyclidine (PCP), and cocaine.

Following the incriminating trail upstairs, the police found in the appellant's second-floor bedroom another hot

plate, a chemical supply catalog, two chemistry books, a plastic labware catalog, and a magazine describing illicit drugs. Several of the chemistry books were in Mr. Ewachiw's name.

In that same bedroom, the bulk of the money was found sitting on top of the dresser. The bills were in increments of $100 wrapped with rubber bands. The bundles containing $100 each were, in turn, wrapped in increments of $1,000. Detective Marcus testified that "there were approximately twelve bundles." Recovered from the dresser was actually a total of $13,200. An additional $975 was seized from the appellant's wallet.

Detective Marcus testified, moreover, that in his experience, "in dealing with narcotics drug trafficking and so forth, a thousand dollars is [the] approximate amount of money that is used to purchase an ounce of PCP." Under all of the circumstances, Judge Allen's conclusion that the seized cash had "been used or intended for use in connection with their illegal manufacture" followed ineluctably. In arguing the absence of "close proximity," the appellant seems to fixate obtusely on the fact that narcotics were found in the basement and the money was found in a second-floor bedroom, two floors away. He conveniently forgets the wealth of incriminating data, most especially the metal chips and the detailed instructions for manufacturing PCP, found on the first floor. This alone, if it were necessary, cuts the distance in half. He is equally forgetful that the trail of chemical supply catalog, labware catalog, and chemistry books (for which no credible innocent explanation was offered) leads right on upstairs to within touching distance of the cash itself. The very wrapping pattern of "$100 bundles" and "$1,000 bundles of bundles," itself a significant circumstance, literally envelops the seized cash itself. As Chief Judge Gilbert pointed out for this Court in *Bozman v. Office of Finance,* 52 Md.App. 1, 4–5, 445 A.2d 1073 (1982), *aff'd,* 296 Md. 492, 463 A.2d 832 (1983):

"The breadth of the term 'close proximity' deliberately has not been defined by either Maryland appellate court.

Were we to undertake a delineating of 'close proximity,' it is almost a foregone conclusion that in any future searches, monies will always be found outside the area embraced by our definition. We shall not, therefore, attempt to define 'close proximity.' Instead, we shall treat the term with the same deference afforded 'fraud' and 'a quantity sufficient to indicate an intent to distribute.' We liken 'close proximity' to Justice Stewart's comment on pornography. We do not define it, but we know it when we see it. In short, we shall determine 'close proximity' on a case-by-case basis.

'Close proximity' as used in Md.Ann.Code art. 27, § 297(a)(6) must be understood with reference to the legislative purpose. Judge Digges, in *Prince George's County v. Blue Bird Cab Co., Inc.*, 263 Md. 655, 662, 284 A.2d 203, 207 (1971), observed that the Legislature's purpose in adopting the forfeiture provisions was an 'attempt not only to curtail drug traffic in this [S]tate, but to discourage such a blight from continuing in the future.' " (Footnotes omitted).

The fact finding of Judge Allen on the ultimate merits of the forfeiture itself was not clearly erroneous.

■ The appellant's second contention is a bit muddled, but we will try to state what we sense to be its thrust. The appellant is focusing upon the second and third sentences of § 297(a)(6) and claiming that they represent an unconstitutional deprivation of due process of law. The second sentence sets out the legislatively created presumption that when money is found in close proximity to contraband drugs or paraphernalia, that money is presumed to be forfeitable; it is thus presumed to have "been used or intended for use in connection with" the illicit drug operation. The third sentence casts upon the defendant in the forfeiture proceeding the burden "to rebut this presumption."

In arguing that the use of a presumption in that fashion constitutionally runs afoul of *In re Winship*, 397 U.S. 358,

90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), and *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), the appellant is essentially arguing that although a Thayer-Wigmore presumption, casting upon a criminal defendant a mere burden of production, may be constitutional, a Morgan presumption, casting upon a criminal defendant the heavier burden of ultimate persuasion, is never constitutionally permitted. The appellant's argument would seem to say further that the legislatively created presumption in this case is more than a Thayer-Wigmore presumption, simply shifting to him the burden of production. The appellant's thesis is that when he offered an explanation for the presence of the cash in his bedroom and on his person, that represented a *prima facie* case that the case was not "used or intended for use in connection with" the illicit drug traffic and that that should have dissipated or "burst the bubble" of the presumption. The State would thereby have been divested of all possible reliance upon the presumption and would have been required to prove the illicit use or intended illicit use by the requisite burden of persuasion just as it was required to prove all other elements of the case. If the final sentence of the subsection casts any burden of ultimate persuasion upon the defendant, that statutory provision, so the appellant's thesis runs, would be unconstitutional.

There is more difficulty in stating the appellant's contention than in answering it. There is both a factual answer and a legal answer. Factually, it is obvious that Judge Allen never relied upon a presumption of illicit use arising from a predicate fact of close proximity. His Memorandum Opinion and Order makes it clear that he found, as a matter of fact, the illicit use directly from the affirmative evidence offered by the appellee. Based upon the pervasive presence of drugs, paraphernalia, and equipment; upon the metal chips and the direction book for making PCP; upon the chemistry books and pharmaceutical catalogs; and upon the very wrapping pattern of the cash itself, Judge Allen made his findings of fact upon the ultimate merits:

"This Court is persuaded that the money found in the Ewachiw residence was intended for use in connection with violations of narcotics laws and is, therefore, subject to forfeiture.

*     *     *     *     *     *

Viewing the evidence as a whole, this Court finds the cash to be intended for use in connection with violations of narcotics laws."

Even if we were to assume, *arguendo,* that the legislatively created presumption was unconstitutional, it simply played no role in this case whatsoever.

The legal answer is that this is not a criminal case. *In re Winship, supra,* and all of its progeny, including *Mullaney v. Wilbur, supra, Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), and *Connecticut v. Johnson,* 460 U.S. 73, 103 S.Ct. 969, 74 L.Ed.2d 823 (1983), are concerned only with criminal prosecutions. Permeating the entire discussion in *In re Winship* is the special protection given to defendants facing conviction for a violation of the criminal law. The holding of *In re Winship,* which is the doctrinal point of departure for this entire body of law, is that "the Due Process Clause protects *the accused* against *conviction* except upon proof beyond a reasonable doubt of every fact necessary to constitute *the crime* with which he is charged." 397 U.S. at 364, 90 S.Ct. at 1072, 25 L.Ed.2d at 375 (emphasis supplied). By way of contrast, it is clear that the proceeding under this forfeiture statute is a civil *in rem* action. *Prince George's County v. Blue Bird Cab Company,* 263 Md. 655, 284 A.2d 203 (1971). The action is not *in personam* against Ewachiw himself; it is *in rem* against the alleged contraband *per se.*

If the statute casts, as it clearly seems to, the burden of ultimate persuasion upon the owner of the property subject to forfeiture to provide an explanation for the presence of the cash which is *not only theoretically believable but* which is *actually believed* by the fact finder, that burden would be compatible with the tone and stated purpose of

the forfeiture statute. Indeed, in commenting upon the deliberate harshness of the forfeiture law, Judge Digges noted, for the Court of Appeals, in *Prince George's County v. Blue Bird Cab Company, supra*, at 263 Md. 662, 284 A.2d 203:

> "We agree that in some ways this is a harsh law; however, it is within the Legislature's power to decide whether such a forfeiture provision is desirable. Its purpose is to attempt not only to curtail drug traffic in this state, but to discourage such a blight from continuing in the future. Historically, decisive action has been required to prevent any plague from spreading. In the present case the Legislature has clearly indicated its purpose for this act. It is to control the proliferation of dangerous drugs in our society and it is a noble purpose, but an arduous task. The measures that have been taken are not out of step with the great weight of authority."

A Morgan-type presumption, moreover, has always been appropriate in civil proceedings. Quite fittingly, it casts upon the party with the greatest access to the information the burden of being forthcoming with all available information. If circumstances cast a cloud of suspicion over the money, as the proximity of the money to clear evidence of socially unacceptable behavior did here, it is not inappropriate to require the appellant to dispel that cloud of suspicion to the ultimate satisfaction of the fact finder. In *Plummer v. Waskey*, 34 Md.App. 470, 485, 368 A.2d 478 (1977), we spoke directly to this issue:

> "This due process limitation on the operation of legal presumptions, however, does not operate in the civil arena. There, unhindered by the due process clause, the burden of ultimate persuasion as well as the burden of producing evidence may be allocated to either party on any particular issue as the emerging common law deems appropriate and fair. A presumption in the other tradition—the Morgan tradition—that remains in the case and that does not disappear like the bursting bubble is appropriate in the civil law."

The distinction between procedural devices which are forbidden in the criminal law but are not only permitted but sometimes logically compelling in the civil law was one we made in *Evans v. State,* 28 Md.App. 640, 708 n. 40, 349 A.2d 300 (1975):

"What emerges is that the use of a presumption in the Morgan tradition may remain perfectly appropriate for civil litigation, where burdens even of ultimate persuasion may shift back and forth throughout the course of a trial. It is not inappropriate in such civil litigation to require a person asserting a position to bear the burden of proving that position. 'The proponent of an issue bears the burden of that issue.' Nor is it inappropriate to adjust the burden of persuasion where facts are 'peculiarly within the knowledge' of one of the parties. McCormick, *Evidence* (1954), at 675. Such a tradition, however, is not appropriate as a model for criminal law."

That the Due Process Clause of the Fourteenth Amendment does not intrude upon the procedural and evidentiary devices deemed appropriate for handling civil litigation in the state courts could not be more clear. The appellant argues that the forfeiture action threatens him with the deprivation of "property" within the contemplation of the Due Process Clause; so, of course, under that line of reasoning, might every action over the control of property and every action in damages known to the civil law. The Due Process Clause, if applicable, would preclude the use of the ordinary civil burden of persuasion, but the Court of Appeals has regularly held the "mere preponderance of the evidence" to be the appropriate burden of persuasion in these forfeiture proceedings. *Prince George's County v. Blue Bird Cab Company,* 263 Md. at 659, 284 A.2d 203. The Due Process Clause, if applicable, would give the appellant a protection against double jeopardy, but it has regularly been held that an owner of property can suffer forfeiture even after the owner has been found not guilty of the underlying criminal offense. *United States v. Janis,* 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976); *State v.*

*Greer,* 263 Md. 692, 284 A.2d 233 (1971). The Due Process Clause, if applicable, would give the appellant here a constitutional right to trial by jury, but the State is not required by the Federal Constitution to provide a trial by jury in civil cases. United States Constitution, Amendment VII. The Due Process Clause, if applicable, would give the appellant here a Sixth Amendment right to counsel, but that is obviously not available. The Due Process Clause, if applicable, might strike down, under Eighth Amendment proportionality analysis, the forfeiture of a Rolls Royce used to facilitate the possession of a lone marijuana cigarette; yet such is permitted under the stern provisions of the Maryland forfeiture law. *State v. One (1) 1982 Plymouth,* 67 Md.App. 310, 507 A.2d 633 (1986).

It is clear that the decision as to the wisdom of this procedural device is one resting in the hands of the Maryland General Assembly unfettered by the Federal Fourteenth Amendment. In taking that "decisive action [that] has been required to prevent any plague from spreading," *Prince George's County v. Blue Bird Cab Company,* 263 Md. at 662, 284 A.2d 203, the Legislature has deliberately sought to strengthen the State's hand, not only by permitting forfeiture upon a bare preponderance of the evidence, but by giving the State the benefit of a presumption and requiring the owner of the property to rebut that presumption. As we pointed out in *Bozman v. Office of Finance, supra,* 52 Md.App. at 5–6, 445 A.2d 1073:

> "Recognizing the great degree of difficulty that would confront the prosecution if it were required to prove that monies found in a search of premises were directly attributable to proscribed activity, the General Assembly wisely eliminated that burden by declaring that monies in 'close proximity to contraband controlled dangerous substances or controlled paraphernalia' were forfeited unless, after a hearing on a petition for forfeiture, the court shall find that the monies seized were not in close proximity to contraband." (Footnote omitted).

In this case, as we have pointed out, the State did not need the benefit of the presumption; where needed, however, it is available. The General Assembly has spoken. That, for our purposes, is controlling.

■ The appellant's third contention is that the Petition for Forfeiture should have been dismissed for lack of prosecution under Maryland Rule 2–507. The contention lacks merit in several regards. In the first place, we are not dealing with a procedure established for the benefit of civil defendants but rather with a management device created primarily for the benefit of the court system itself, enabling it to clear its cluttered dockets of obvious dead wood. In discussing the origins of Maryland Rule 530 (the predecessor of Rule 2–507), Judge Digges explained, in *Mutual Benefit Society of Baltimore v. Haywood*, 257 Md. 538, 539, 263 A.2d 868 (1970):

"For far too many years the courts of Maryland have been plagued by the onslaught of an ever increasing backlog of cases. And only after many years of experimentation, persuasion, arm twisting and the utilization of the local and this Court's rule making powers has the judiciary been able to check one of the most frustrating ironies of the crowded docket. By creating a statewide dismissal rule (Maryland 530) we were confident that we could at least focus on the dead case, the case left unprosecuted for years at a time, whose mere presence in the mainstream of pending cases created such a paper logjam that our courts were unable to give due attention to cases that still exhibited the vital signs of life."

In arguing an alleged lack of diligence on the part of the appellee for failing to locate the appellant at a time when he was being detained somewhere within the vast "archipelago" of the Maryland correctional system, the appellant treats Rule 2–507 as tantamount to the Sixth Amendment right of a criminal defendant to a speedy trial, *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), or the statutory right of a Maryland criminal defendant to a trial within the legislatively determined period. *State v.*

*Hicks,* 285 Md. 310, 403 A.2d 356 (1979). The analogy is simply inapt; we do not assess the Court's effort to regulate its caseload under Rule 2–507 by the same standards applicable to a criminal defendant's claiming of a constitutional or statutory right to a speedy trial. Neither in terms of the underlying purpose of the respective rules nor in terms of the intended beneficiaries of the respective rules is there any parallel. The obligation upon the State to locate and to bring to trial a criminal defendant has no counterpart in the procedural contest between civil litigants, who are treated by the law as being equally well advantaged.

Judge Digges, in *Stanford v. District Title Insurance Company,* 260 Md. 550, 554–555, 273 A.2d 190 (1971), reiterated the theme that the central purpose of the Rule is not to benefit the individual litigant but "to clear the docket" of abandoned and forgotten suits so that the judicial machinery may operate more efficiently:

"Rule 530 is the device by which the most intolerable delays, delays which have mounted up to five and six years and beyond in some sections of this country, and, indeed, in this state, can be ultimately eliminated."

The precise commencement of this forfeiture action was on March 28, 1983, the day on which the Petition for Forfeiture was filed with the clerk of the court. On the issue of dismissal for lack of prosecution, nothing matters that happened prior to that date. The appellant's continuous references to the fact that the case "arose out of an incident on November 1, 1981," are no more than flights of immaterial rhetoric. The timeliness of the commencement of the action is a distinct issue and is, indeed, a separate appellate contention. It has nothing to do, however, with the prosecution of an action once commenced. The resolution of this particular issue would be identical whether the forfeiture petition had been filed on the same day as the underlying search and seizure or had been filed twenty years later. Our point of departure is March 28, 1983, and nothing that went before has the remotest relevance to the matter at hand.

Rule 2–507(c) provides that, "An action is subject to dismissal for lack of prosecution at the expiration of one year from the last docket entry...." Once the present action was "subject to dismissal" under the Rule, the clerk, as is required by subsection (d), served "notice on the parties" that "an order of dismissal" would be entered within thirty days unless appropriate action was taken. The clerk sent such notice on April 6, 1984. Within the thirty-day period provided by subsection (e), the plaintiff-appellee appropriately filed a Motion to Suspend. Since the literal thirtieth day, arguably May 6, 1984, fell on a Sunday, the appellee had until May 7 to file the Motion to Suspend. The motion was filed on May 7. On May 23, 1984, Judge Thomas Ward granted a one-year suspension of Rule 2–507.

Initially fatal to any argument the appellant makes with respect to the propriety of this order is the fact that the appellant never objected to it. Nothing is, therefore, preserved for appellate review. In the alternative, it would be equally fatal to the appellant's argument that no record of the proceeding before Judge Ward has been produced by the appellant. As the Court of Appeals emphatically pointed out, in *Langrall, Muir & Noppinger v. Gladding*, 282 Md. 397, 400, 384 A.2d 737 (1978), in reversing a decision by this Court, "The burden of producing the record of any proceeding is upon him who would attack its sufficiency." The Court of Appeals there held, at 282 Md. 401, 384 A.2d 737:

"The Court of Special Appeals noted with particularity that the trial judge made no stenographic record nor did he outline his reasons for his action. Without question, the better practice for any trial judge when exercising his discretion under Rule 530 is to set forth the basis for his ruling on the record, with unmistakable clarity, orally or by memorandum opinion. However, it is the responsibility of the aggrieved party, the party claiming abuse, to preserve his objection for review."

On the failure of the appellant to rebut the presumptive validity of Judge Ward's action, we hold, as did the Court of Appeals, 282 Md. at 401–402, 384 A.2d 737:

"He was the most knowledgeable party as to the ultimate effect of the court's ruling on his defense. If he felt abused, he had only to preserve the basis for his contention by requesting the court to record its reasons for review. However, he made no such request and now, instead, invites the appellate court to rule in a vacuum. No court can perceive the subtlety of a trial court's judgment or understand the balancing factors employed by it from a silent record."

Again ignoring his failure to preserve the point for appellate review, the appellant argues that the suspension of the rule for the period of one year was, *ipso facto*, an abuse of discretion on the part of Judge Ward. We are informed that one year is the customary extension granted in these cases by the Circuit Court for Baltimore City. For Judge Ward to have done what is regularly done by his colleagues in Baltimore City hardly qualifies as a clear abuse of discretion. As the Court of Appeals noted, in *Stanford v. District Title Insurance Company, supra,* 260 Md. at 555, 273 A.2d 190, "That decision, whatever it may be, rests in the sound discretion of the trial judge and we will only invade his province on appeal in extreme cases of clear abuse." Indeed, in reviewing the decisions of the Court of Appeals on the merits of dismissal for lack of prosecution, we note that that Court has invariably upheld the decisions of the trial judge, whether granting the dismissal or denying the dismissal, as falling within the appropriate discretionary range.

Upon timely motion by the plaintiff-appellee, Judge Joseph H.H. Kaplan granted, on May 1, 1985, an additional ninety-day extension. Once again, the appellant failed to note any timely objection to that action. The fact that he did file an objection to a subsequent third extension does not serve to revive the reviewability of the merits of the first or second extensions. Once again, by way of alterna-

tive rationale, the appellant has produced no record from which we could rebut the presumptive validity of Judge Kaplan's ruling.

Within the ninety-day extension period, the plaintiff-appellee again moved, on July 18, 1985, for a further extension. Because the only trial date counsel could agree upon was not available to the court, Judge Hilary Caplan, on August 6, 1985, granted an additional sixty-day extension. Indeed, this third extension appears clearly to have been for the convenience of the court in managing its calendar. In no event do we perceive any clear abuse of discretion. *Stein v. Maryland State Police,* 62 Md.App. 702, 491 A.2d 603 (1985).

The appellant's final contention goes to the timeliness of the commencement of this action. Section 297(b)(4) provides that all forfeiture "proceedings relating to money or currency ... shall be instituted within 90 days from the date of final disposition of criminal proceedings which arise out of Article 27, § 276 through § 302 inclusive." There is no impediment here. The criminal charges against the appellant, arising out of the search and seizure of his house on November 10, 1981, were *nolle prossed* on January 26, 1983. The Petition for Forfeiture, which commenced the present action, was filed on March 28, 1983, sixty-one days later. This was well within the ninety-day period provided by the statute.

The appellant has suffered a convenient lapse of memory in this regard. In the seventh paragraph of his Answer to Petition, he does not allege, but simply raises the possibility, that the forfeiture petition was not timely filed:

"The Defendant agrees that eventually the charges against him were Nolle Pros. He does not remember the specific date but believes that this Petition for Forfeiture was filed after ninety (90) days from final disposition of the criminal charges in this case and should therefore be dismissed pursuant to the terms of Article 27, Section 297(b)(2)."

■ Recognizing the insubstantiality of his factual predicate, the appellant has shifted gears upon appeal and now argues that the petition was flawed, as a matter of pleading, for failing to allege a timely filing within the ninety-day period. The appellant cites no case law supporting this strained proposition. Indeed, the clear thrust of *Bozman v. Office of Finance*, 52 Md.App. 1, 445 A.2d 1073 (1982), and *Bozman v. Office of Finance*, 296 Md. 492, 463 A.2d 832 (1983), is to the contrary. Those cases held that it is not necessary to prove or to allege that a "final disposition" of the criminal charges has ever taken place, let alone that the forfeiture petition was brought within a ninety-day period after such "final disposition." In dealing with the very provision of § 297(b)(4) now under review, Chief Judge Gilbert held for this Court, 52 Md.App. at 10, 445 A.2d 1073:

> "The statute does not, in our view, require that the governmental agency affirmatively prove as part of its case that it commenced proceedings within 90 days of 'final disposition.' On the contrary, the 90–day period is likened unto a statute of limitations and, as with limitations, must be specially pleaded and demonstrated. It is, in essence, an affirmative defense. Since the record in the instant case fails to show when 'final disposition' occurred, if in fact it has, we are unable to say that the forfeiture was not begun within the statutory time frame."

■ As "an affirmative defense," the alleged non-timeliness of the filing was a matter to be "specially pleaded and demonstrated" by the appellant. It was not for the appellee to plead and to prove timely filing; it was for the appellant to plead and to prove non-timely filing. This, he has not done.

Since the merits of this resolution stand out so prominently, we need not remind the appellant that he did not raise the issue of the adequacy of the pleading below; there, in contrast with his argument here, he dealt with the merits of the timeliness of the filing and not with the adequacy of the pleading. Paragraph 8 of his Answer to Petition read:

"By way of affirmative defense, the Defendant specifically alleges that the provisions of Article 27, Section 297(b)(2) have been violated, in that the Petition was not filed within ninety (90) days from the date of final disposition of criminal proceedings, from which the forfeiture arose."

In affirming the judgment of forfeiture, we advert again to the clear purpose of § 297, so aptly characterized by the Court of Appeals, in *Prince George's County v. Blue Bird Cab Company, supra,* 263 Md. at 662, 284 A.2d 203:

"Its purpose is to attempt not only to curtail drug traffic in this state, but to discourage such a blight from continuing in the future. Historically, decisive action has been required to prevent any plague from spreading."

The "full court press" will be maintained.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.