645 A.2d 639

Anthony VIEIRA

v.

**PRINCE GEORGE'S COUNTY, Maryland.**

**No. 1480, Sept. Term, 1993.**

Court of Special Appeals of Maryland.

June 8, 1994.

Reconsideration Denied Aug. 30, 1994.

Certiorari Granted Dec. 21, 1994.

**222**

Richard A. Finci (Houlon & Berman, on the brief), Hyattsville, for appellant.

Kimla Thompson Milburn, Associate County Atty. (Michael P. Whalen, County Atty. and Albert J. Lochte, Deputy County Atty., on the brief), Upper Marlboro, for appellee.

Argued before MOYLAN, BISHOP and GARRITY, JJ.

BISHOP, Judge.

Appellee, Prince George's County ("the County"), and Eric M. Tucker ("Mr. Tucker"), the County's Director of Finance, instituted a forfeiture action in the Circuit Court for Prince George's County against appellant, Anthony Vieira ("Vieira"), and $7,850 in U.S. Currency. Vieira filed a petition for return of seized currency, alleging that the County failed to file the requisite show cause order within ninety days following the disposition of the underlying criminal proceeding. The court denied the petition without hearing. Vieira then filed a motion for reconsideration, which the court also denied without hearing. After a trial on the merits, the court ordered forfeiture of the currency to the County. Vieira filed a timely notice of appeal to this Court.

### Issue

Vieira raises the following issue for our consideration: Whether the trial court erred by failing to grant appellant's petition for return of seized currency, in which he alleged that the initiation of the forfeiture action was defective for failure to file a show cause order within the time limits prescribed by Md.Ann.Code art. 27, § 297(d)(2) (1992).

### Facts

On January 24, 1992, members of the Prince George's County Police Department arrested Vieira and seized $7,850 in U.S. Currency after finding drug paraphernalia in Vieira's possession during a traffic stop. The underlying criminal proceeding arising out of Vieira's arrest reached "final disposition" on March 6, 1992.

The docket entries indicate that the County filed a four page complaint for forfeiture of currency on June 3, 1992, 89 days after disposition of the criminal case. That complaint included an affidavit of Mr. Tucker, but did not include a show cause order. The next docket entry, which is dated June 18, 1992, reads as follows: "SHOW CAUSE ORDER (GRAYDON S MCKEE, III), FD. CC GIVEN TO THE ATTY FOR

SERVICE. BJB." That entry refers to a show cause order that was executed on June 17, 1992, 103 days after disposition of the criminal case.

Because Vieira was not timely served with process, the County, on July 15, 1992, filed a line to re-issue order to show cause. Pursuant to that request, a second show cause order was signed on July 21, 1992, filed in the clerk's office on September 24, 1992, and entered on the docket the following day. Another line to re-issue show cause order was filed on September 23, 1992. The court signed the order on October 6, 1992, and it was entered on the docket the following day. On October 16, 1992, Vieira was served with the complaint, affidavit, and show cause order.

### *Discussion*

Article 27, § 297(d), of the Annotated Code of Maryland (1992) provides in pertinent part:

(2) In the event of seizure pursuant to paragraph (1)(iii) and (iv) of this subsection, proceedings under subsection (f) of this section shall be instituted promptly, **except all proceedings relating to money or currency, that shall be instituted within 90 days from the date of final disposition of criminal proceedings that arise out of Article 27, §§ 276 through 302, inclusive.**

(i) All applications for the forfeiture of money or currency contraband shall be made by the director of finance of Baltimore City, the county treasurer or appropriate county finance officer, municipal treasurer, or the Attorney General. *The applications shall be by complaint, affidavit and show cause order* and shall be filed in the District Court or circuit court of the county.

(ii) The complaint, affidavit and show cause order shall be served in the first instance pursuant to Maryland Rule 2–121 or Maryland Rule 3–121(a), and thereafter, the summons having been returned non est, the director of finance of Baltimore City, county treasurer or appropriate county finance officer, municipal treasurer, or Attorney General

may proceed pursuant to Maryland Rule 2–122 or Maryland Rule 3–121(b) or (c).

(3)(i) *If proceedings relating to money or currency are not instituted by the State or a political subdivision within the 90–day period, the money or currency seized under this section, upon petition by the defendant, shall be returned to the defendant.*

(Emphasis added). Vieira argues that, because the County failed to file a show cause order pursuant to Art. 27, § 297(d)(2)(i) within the ninety-day period following final disposition of the underlying criminal proceeding, the trial court erred when it denied his petition for return of money filed pursuant to Art. 27, § 297(d)(3)(i). We agree.

## A

### Background

In *Ewachiw v. Director of Finance,* 70 Md.App. 58, 60, 519 A.2d 1327, *cert. denied,* 309 Md. 605, 525 A.2d 1075 (1987), Judge Moylan, writing for this Court, recognized that the General Assembly, "[a]s part of its 'full court press' against the illicit drug traffic, . . . provided for the forfeiture to the State of all money or currency found to have been used or intended for use in connection with . . . drug traffic[king]." Judge Moylan referred to Art. 27, § 276, the legislative findings and declarations section of the Health–Controlled Dangerous Substances subheading. That section

> sets out the purpose of the comprehensive law and provides guidelines for interpreting and construing that law. After declaring that the illicit drug traffic has "a substantial and detrimental effect on the health and general welfare of the people of the State of Maryland" and stating the purpose of the law "to prevent [this] abuse which results in a serious health problem to the individual and represents a serious danger to the welfare of the people of the State of Maryland," subsection (b) of that section provides:

"The provisions of this subheading shall be liberally interpreted and construed so as to effectuate its general purpose as stated hereinabove."

*Id.* In *Prince George's County v. Blue Bird Cab Co.*, 263 Md. 655, 662, 284 A.2d 203 (1971), the Court of Appeals explained that

in some ways [§ 297] is a harsh law; however, it is within the Legislature's power to decide whether such a forfeiture provision is desirable. Its purpose is to attempt not only to curtail drug traffic in this state, but to discourage such a blight from continuing in the future. Historically, decisive action has been required to prevent any plague from spreading. In the present case the Legislature has clearly indicated its purpose for this act. It is to control the proliferation of dangerous drugs in our society and it is a noble purpose, but an arduous task.

Despite the laudable purpose of Maryland's forfeiture statute, it remains that "forfeitures are not favored in the law and should be avoided when possible." *State v. 158 Gaming Devices*, 59 Md.App. 44, 51, 474 A.2d 545 (1984) (*citing Commercial Credit Corp. v. State*, 258 Md. 192, 199, 265 A.2d 748 (1970)), *rev'd in part on other grounds*, 304 Md. 404, 499 A.2d 940 (1985). Further, forfeiture statutes must be interpreted under a "strict constructionist theory." *Id.* at 52, 474 A.2d 545.

In 1974, the General Assembly amended § 297 "for the purpose of setting forth *rights and procedures* respecting money and other property seized in connection with ... controlled dangerous substances laws." *See* 1974 Md. Laws ch. 666, at 2261 (emphasis added). Under the revision, forfeiture proceedings relating to money or currency seized pursuant to what is now § 297(d)(1)(iii) or (iv) had to be instituted within ninety days after the date of final disposition of the underlying criminal proceedings. The revision also mandated that "such applications shall be by petition, affidavit **and show cause order.**" *Id.* at 2264 (emphasis added). In *Bozman v. Office of Fin.*, 296 Md. 492, 499, 463 A.2d 832 (1983), Judge

Menchine, writing for the Court of Appeals, observed with reference to the ninety day filing requirement:

> We believe that the Legislature ... clearly intended to impose a fixed limitation upon the filing of applications for forfeiture *if* a trial has taken place and a final disposition of criminal proceedings has resulted. In such circumstances there remains no reason for the authorized official to delay the filing of an application for judicial decree that will approve or disapprove the seizure and grant or deny the forfeiture.
>
> The legislative purpose plainly was to place a specific time limitation of 90 days after a concluded criminal prosecution in the case of the seizure of money or currency in lieu of the previously indefinite requirement that the filing "shall be instituted promptly."

Despite numerous amendments to § 297 over the ensuing years, the ninety day filing and show cause order requirements have remained an integral part of the forfeiture statute. Since 1974 there has been only one change to the wording of the provisions. By 1989 Md. Laws ch. 285, the reference to "petition" was replaced by "complaint."

The County advances two bases for affirming the judgment of the circuit court: (1) an unexecuted show cause order form was, in fact, filed along with the complaint and affidavit, and (2) even if it were not, Vieira suffered no prejudice as a result of the oversight because, ultimately, Vieira was served with a copy of the complaint, affidavit, and show cause order, filed a timely answer, and appeared at trial. We shall address each contention in turn.

### B

*Was an Unexecuted Show Cause Order Form Filed?*

■ The County first asserts that "the Appellant has failed to conclusively demonstrate that a Show Cause Order was not presented for filing with the required Complaint and Affidavit." The record, however, indicates otherwise. The first

docket entry clearly reflects that the County filed a four page complaint on June 3, 1992. That entry corresponds to the four page complaint in the record, which also includes the affidavit of the County's Director of Finance. The County maintains that an unexecuted show cause order form was, in fact, filed as the "first two pages of the document noted as the 'Complaint' on the docket entries." The County suggests that, because the two pages of the show cause order are numbered one and two, and the four pages of the complaint are numbered three through six, an unexecuted show cause order form was filed contemporaneously with the complaint and affidavit. Although that may be inferred, and in fact may have been the case, this Court must take the record and docket entries as they are, and not read information into them that does not exist.

The County also points to four other indicators, two of which inferentially support the assertion that an unexecuted show cause order form was filed with the complaint: (1) because the first docket entry does not mention the filing of the affidavit, even though it was filed, the absence of any indication that the unexecuted show cause order form was filed is not conclusive (this argument is specious—the affidavit was contained within the complaint—the clerk had no reason to list the affidavit separately in the docket entry); (2) "the case number on the Show Cause Order was left blank, to be filled in by the Clerk, just as was done for the Complaint" (this does not suggest that the documents were filed contemporaneously); (3) in examining the procedure employed to obtain the second and third show cause orders, it is evident that there were delays between the filing of the unexecuted documents and the court's execution of those documents; and, (4) the County requested in paragraph two of its prayer for relief that the court "[o]rder that cause be shown on or before a date certain" why the requested relief should not be granted. Although the latter two indicators are probative of whether a document might have been filed that the court could have ultimately transformed into a show cause order, absent a motion to revise judgment pursuant to Rule 2–535(d) ("Cleri-

cal mistakes in ... the record may be corrected by the court ... on motion of any party....”), and an evidentiary hearing to establish whether an unexecuted show cause order form was filed with the complaint, we are constrained to consider only what plainly appears in the record.

## C

### *The Statute Requires Filing of a Show Cause Order*

 Even assuming, *arguendo,* that the County did file an unexecuted show cause order form along with the complaint and affidavit, the clear and unambiguous language of § 297(d)(2) requires that a show cause *order* be filed within the ninety-day period, not an **unexecuted** show cause order **form.** A show cause order is not an order at all if it has not been executed by the court. The General Assembly chose to require the filing of a show cause order within the ninety-day period. Had it intended otherwise, the General Assembly could have easily crafted the statutory language to evidence a different intent.

An examination of Art. 27, § 264(c), a forfeiture provision relating to money, currency, or cash seized in connection with illegal gambling operations, is instructive:

*Forfeiture upon conviction.*—(1) If the trial or other ultimate disposition of such charge or charges, indictment or indictments, results in a record of conviction being entered against the person or persons so arrested, in connection with which the money, currency, or cash may have been so seized or captured, the State Treasurer, the county treasurer of the county or director of finance in Baltimore City, or the municipal treasurer or director of finance of the municipality, ***shall within 90 days from the date of the record of the entry of such conviction, unless the case is appealed to an appellate court, make application*** to the District Court or circuit court of the county, for an order declaring and ordering that such money, currency or cash in the custody of the State Treasurer, director of finance, or county or municipal treasurer shall be forfeited to the sole

use and gain of the State, county or city. The court to which any such application has been directed shall establish to its satisfaction that there is no pending and undetermined suit or proceeding which has been filed in any court of competent jurisdiction, against the director of finance or treasurer or the municipal treasurer or director of finance of the municipality, seeking a return or recovery of the money, currency or cash so held in custody, before the court shall proceed so to order a forfeiture of such money, currency or cash to the State, county or Baltimore City.

(2) *All applications for the forfeiture of contraband shall be by petition and a copy of the petition and show cause order shall be served in the first instance in accordance with the Maryland Rules.*

(Emphasis added). Thus, in § 264(c), the General Assembly clearly provided that application for forfeiture need only be made by petition filed within the ninety-day period following conviction; the show cause order, however, need only be executed and served at some time after institution of the action. *See also* Md.Bus.Reg.Code Ann. § 17–20A–04(c)(3)–(4) (1992); Md.Cts. & Jud.Proc.Code Ann. § 3–412(b)–(c) (1989); Md.Est. & Trusts Code Ann. § 8–106(c) (Supp.1993); Md.Real Prop.Code Ann. §§ 7–106(b)(3), 8–303 to –304, 9–106(a)(1) (1988); Md.Tax–Gen.Code Ann. § 13–522(a) (1988); Md.Ann.Code art. 78, § 81(b) (1991). If this Court were to construe the language in § 297(d)(2) differently, we would open a Pandora's Box of other issues, such as whether an unsigned affidavit satisfies the affidavit requirement, or whether a complaint that does not contain a demand for judgment for relief sought satisfies the complaint requirement.

When, as in this case, a statute requires that a show cause order be filed within a specified time frame, it is the responsibility of the plaintiff to assure that the order is signed and filed in a timely fashion. It is improper simply to file a complaint and "throw" the show cause order form "into the hopper" for the clerk to handle. Instead, proper procedure dictates taking the following steps: (1) the complaint and affidavit should be filed with the clerk of the court; (2) the

court file and unexecuted show cause order form should be presented to a judge for his or her signature; (3) after the order is signed, it should be determined that the order is filed with the clerk of the court within the specified time frame.

### D

### *Is Prejudice Relevant?*

█ Next, the County suggests that, even if a show cause order were not filed within the ninety-day period, Vieira did not suffer any prejudice as a result, and therefore, we should affirm. In *State v. One 1979 Pontiac Firebird,* 55 Md.App. 394, 462 A.2d 73 (1983), this Court was faced with a somewhat similar issue in the context of an automobile forfeiture: whether the State's failure to comply with the notice requirement of then Art. 27, § 297(h) warranted dismissal where a co-owner of the vehicle had actual notice of the forfeiture and suffered no prejudice. The pertinent provisions of § 297 then provided:

(g) *Same—Notice to Motor Vehicle Administrator; certifying name and address of owner.*—Upon the seizure of a motor vehicle and the recommendation for forfeiture, the State's attorney for the county or City of Baltimore where the seizure is made shall notify the Motor Vehicle Administrator by certified mail of the seizure and of the motor or vehicle identification number of the motor vehicle seized. The Administrator shall promptly certify to the State's attorney the name and address of the owner. The term "owner" in this subtitle includes a secured party as well as an owner, as those terms are defined in the Maryland Vehicle Law.

(h) *Same—Notice to Owner.*—The State's attorney for the county or Baltimore City where the seizure is made shall notify the owner of the motor vehicle by certified mail of the seizure and of the determination by the State's attorney of whether the owner knew or should have known

that the motor vehicle was being, or was to be, used in violation of this subtitle.

*Id.* at 397, 462 A.2d 73.

We recognized that subsection (h) was "that part of the forfeiture statute designed to ensure post-seizure due process protection to owners of automobiles subject to forfeitures" and that the purpose of the establishment of the standards, guidelines and methods of procedure was to ensure, *inter alia,* "adherence to due process requirements." *Id.* at 398–99, 462 A.2d 73. We then rejected the State's "harmless error" argument:

> The State would have us adopt the position that once it has been established that the owner or owners had actual notice of the seizure of a vehicle and of its proposed forfeiture, that a failure to give the notice preserved by Art. 27, § 297(h) would be harmless. We decline to do so. The failure to give the required statutory certified mail notice could cause every forfeiture action to degenerate into a testimonial fire-fight between the parties as to whether actual notice was given, when it was given and in what form it was given. What is essentially a simple matter could and would become a complex evidentiary and legal question to add new burdens to our already overburdened courts. The Legislature has provided a simple directive to solve the problem by the adoption of the statute. *It has indicated its intention that its directive be followed by including the word "shall" in the language of the statute. The use of "shall" in the context of this statute should be regarded as a direction from the Legislature that certain conduct is required. Ordinarily the word "shall" is mandatory and it is presumed that the Legislature used this word in its usual and natural meaning unless there is something in the legislation to indicate otherwise.*

*Id.* at 399–400, 462 A.2d 73 (emphasis added).

 Likewise, the General Assembly, by enacting 1974 Md.Laws ch. 666, intended to mandate specific procedural due process requirements as a condition precedent to forfeiture.

*See United States Coin & Currency in the Amount of $21,-162.00 v. Director of Finance*, 279 Md. 185, 187–88, 367 A.2d 1243 (1977); see also *Ewachiw*, 70 Md.App. at 76, 519 A.2d 1327 (holding that the ninety-day period is in the nature of a statute of limitations, the non-compliance with which must be specially pleaded as an affirmative defense). Under Art. 27, § 297(d)(2), forfeiture proceedings relating to money or currency *"shall* be instituted within 90 days" and the applications *"shall* be by complaint, affidavit, *and show cause order."* (Emphasis added). Further, the General Assembly provided a mandatory sanction when proceedings are not instituted within the ninety-day period. "[U]pon petition by the defendant, [the money or currency] *shall* be returned to the defendant." *Id.* § 297(d)(3)(i) (emphasis added); *see also State v. Walls*, 90 Md.App. 300, 310, 600 A.2d 1165 (1992) (where State or local jurisdiction fails to institute forfeiture proceeding within the ninety-day period required by § 297(d)(3)(i), the defendant "is unconditionally entitled to the return of his money" upon the filing of the proper petition).

On its order denying Vieira's petition for return of currency, the trial court wrote: "See Md. Rule 2–101." That rule states that a "civil action is commenced by filing a complaint with a court." The court apparently read Rule 2–101 in conjunction with §§ 297(d)(2) and 297(d)(3)(i), and concluded that, because a complaint was filed within the ninety-day period, the forfeiture proceeding was "instituted" within the ninety-day period within the meaning of those sections. The court, however, did not give proper effect to Rule 1–201(c), which provides: "Neither these rules nor omissions from these rules supersede common law or statute unless inconsistent with these rules." Neither did the court read §§ 297(d)(2) and 297(d)(3)(i) in harmony with § 297(d)(2)(i), which clearly requires that the complaint and affidavit be accompanied by a show cause order, or at least that the show cause order be filed some time after the complaint and affidavit, but in no event beyond the ninety-day period. *See State v. Crescent Cities Jaycees Found., Inc.*, 330 Md. 460, 468, 624 A.2d 955 (1993) ("[W]e do not read particular language in a statute in isolation or out of context;

rather, we construe statutory language in light of the Legislature's general purpose and in the context of the statute as a whole.").

A show cause order is an *ex parte* order of court directed to a person to show cause on or before a date indicated therein why the court should not take the action described in such order. *See* 60 C.J.S. *Motions & Orders* § 20 (1969); *see also* 56 Am.Jur.2d *Motions, Rules & Orders* § 34 (1971); former Md.Rule 324(a)(1) (1984). When a show cause order is served with a complaint, the order essentially takes the place of a summons, directing the person to answer the complaint within a time certain, usually a shorter time than is generally allowed under Rule 2–321 for answering a complaint. *Cf.* 60 C.J.S. *Motions & Orders*, § 20 (1969) ("The most usual use of orders to show cause is as a method of shortening the notice of motion prescribed by law....."). The ninety-day limitation period along with the show cause order requirement evidence the legislative intent for the speedy disposition of forfeiture actions relating to money or currency.

Two weeks passed between the filing of the complaint and affidavit, and the trial court's execution of the show cause order. Had the show cause order in the case *sub judice* been filed within the ninety-day period, the first attempt of service of process might have been successful. Instead, there was a delay, and service of process could not be effectuated on Vieira for four months.

There is yet another purpose underlying the show cause order requirement. The General Assembly, by substituting "petition" for "complaint," clearly intended to treat the forfeiture proceeding as any other civil proceeding. Had the General Assembly simply left out any reference to a show cause order, a defendant, in most instances, would have had to answer the complaint within thirty days. *See* Rule 2–321(a). Instead, the General Assembly included the show cause order requirement, not only to expedite notice, but also to add a measure of protection for the defendant.

■ A show cause order may only be signed by a judge "upon determining that the allegations of the petition are sufficient and not frivolous." *In re Forfeiture of U.S. Currency in the Amount of $5,300.00,* 429 So.2d 800, 803 (Fla.Dist.Ct. App.1983); *see also* Fla.Stat.Ann. § 932.704(1) (West 1985) (Forfeiting agency "shall promptly proceed against the contraband article ... by rule to show cause in the circuit court ... upon producing due proof that the contraband article ... was being used in violation of the provisions of such law.") (repealed 1992). In the context of a forfeiture proceeding such as the one *sub judice,* the allegations in the complaint and affidavit must "rise above the level of mere suspicion and ... create a reasonable ground for the belief that the money was connected to," or a proceed of, illegal drug activity. *In re Forfeiture of $10,788.00,* 580 So.2d 855, 858 (Fla.Dist.Ct.App. 1991).

■ If a trial court were to determine, within the ninety-day period, that a complaint was facially insufficient or frivolous, the defendant could, on day ninety-one, petition the court for return of the currency. *Cf. In re Forfeiture of 1978 Ford Fiesta (3 Door) VIN # GCFBTK24642, FLA Tag # VUH234 Tan in Color,* 436 So.2d 373, 374 (Fla.Dist.Ct.App.1983) (reversing trial court's determination, in an action to forfeit a vehicle allegedly used as an instrumentality during the commission of a felony, that probable cause did not exist to issue rule to show cause). If, as the County impliedly suggests, the court does not have to consider the request for issuance of the show cause order until sometime after the expiration of the ninety-day period, the defendant would not be able to petition the court for return of the currency until such time as the court considers and denies the application for issuance of the show cause order.

The County cites *Motor Vehicle Admin. v. Shrader,* 324 Md. 454, 597 A.2d 939 (1991). In *Shrader,* the Court of Appeals noted that "when determining whether a case should be dismissed for non-compliance with a statute or rule ... the purpose and policy of the statute or rule must be considered in

determining the appropriate sanction." *Id.* at 463, 597 A.2d 939. " '[R]esults that are unreasonable, illogical or inconsistent with common sense should be avoided whenever possible consistent with the statutory language, with the real legislative intention prevailing over the intention indicated by the literal meaning." *Id.* The County argues that the "mere failure to file the Show Cause Order [with the complaint and affidavit, or within the ninety-day period] does not require dismissal of the ... forfeiture action" because, in any event, Vieira was properly served with the complaint, affidavit, and show cause order. We disagree.

The General Assembly used mandatory language in § 297(d)(2)(i). Absent an indication to the contrary, it must be presumed that the General Assembly intended that there be literal compliance with that provision. Indeed, the mandatory sanction in § 297(d)(3)(i) supports that construction. *Cf. State v. One 1980 Harley Davidson Motorcycle VIN # 9G3593950*, 303 Md. 154, 160–62, 492 A.2d 896 (1985) (observing that dismissal of a forfeiture action is not the appropriate sanction for noncompliance with Art. 27, § 297(n), which provided that the "hearing shall be scheduled no more than 30 days after conviction of the defendant," where the General Assembly did not provide a sanction for noncompliance). Although §§ 297(d)(2) and 297(d)(3)(i) state only that the proceeding must be "instituted" within the ninety-day period, those sections must be read in harmony with § 297(d)(2)(i), which requires that applications be made by complaint, affidavit, and show cause order. Any other interpretation would significantly weaken the General Assembly's obvious attempt to accelerate the forfeiture process. For example, a complaint and affidavit could be filed within the ninety-day period, but the show cause order could remain unsigned for an indefinite period, clearly frustrating the purpose of the provision.

Although we cannot conclude with any degree of certainty that Vieira was, or was not, prejudiced as a result of the County's failure to file a show cause order within the ninety-day period, no court should be expected to engage in such an analysis. As we said in *One 1979 Pontiac Firebird, supra:*

What is essentially a simple matter could and would become a complex evidentiary and legal question to add new burdens to our already overburdened courts. The Legislature has provided a simple directive to solve the problem by the adoption of the statute. It has indicated its intention that its directive be followed by including the word "shall" in the language of the statute.

55 Md.App. at 400, 462 A.2d 73.

### E

#### Conclusion

In *Morris v. Howard Research & Dev. Corp.*, 278 Md. 417, 365 A.2d 34 (1976), the Court of Appeals considered whether a circuit court order in an administrative appeal must be reversed because a party to the underlying administrative proceeding did not receive notice of the pending appeal. In that case the agency failed to comply with Rule B2(d), which required the agency to " 'give written notice by mail or otherwise of the filing of the appeal to every party to the proceeding before [the agency.]' " *Id.* at 420, 365 A.2d 34; *see* Rule 7–202(d)(2) (the successor to Rule B2(d)). Despite the appellee's arguments that "it should not be held responsible for the [agency's] failure to carry out its duty" under Rule B2(d) and that "it would be both unfair to it and a dangerous precedent to vacate at this time the court order reversing the [agency,]" the Court reversed the judgment of the circuit court:

Even if we accept [the appellee's arguments] as completely valid, we, nevertheless, agree with [the appellant's] contention that it would be equally unfair to bind him by court proceedings of which he had no formal knowledge. This becomes obvious when it is realized that the entire scheme of the rules adopted by this Court for dealing with appeals from administrative agencies ... contemplates notice to, and an opportunity to be heard by, all parties to the proceedings before the agency. *It is, in our opinion, no more onerous in this situation than in any other judicial*

*proceeding to require that a party seeking relief from a court be sure that all parties he seeks to bind by the decision are properly before the court prior to the time he proceeds to obtain a final judgment against them.*

*Id.* at 423–24, 365 A.2d 34 (emphasis added).

The Court in *Morris* essentially placed an obligation (or at least imposed the risk of nonperformance) on the appellee to assure that the agency sent the requisite notice. *A fortiori*, within the context of § 297(d)(2), there is no reason not to expect the plaintiff, or its counsel, to assure that a show cause order, properly executed, is filed with the court clerk within the prescribed time period.

Accordingly, we hold that, where a complaint and affidavit for forfeiture of money or currency is filed pursuant to Art. 27, § 297(d)(2) within ninety days after the date of final disposition of the underlying criminal proceeding, but a show cause order, as defined *supra*, is not filed until after the running of the ninety-day period, the court, upon timely petition by the defendant, must order the return of the money or currency to the defendant. The trial court erred when it failed to do so.

Rule 1201 requires that the administrative judge for Baltimore City, and each county with more than four resident judges, appoint a chambers judge who "shall have primary responsibility for," *inter alia*, "[c]onsideration of and, when appropriate, signing show cause orders." The administrative judge in a county with less than five resident judges may also designate a chambers judge. *See* Rule 1201(a)(2). The chambers judge must be on duty and available "whenever the courthouse is open for the transaction of judicial business therein." Rule 1201(a)(3). In Baltimore City and those counties that have a chambers judge, there should be no reason why the court can not execute a show cause order promptly, when appropriate.

Rule 1201 notwithstanding, this Court is cognizant of the fact that the holding in this case may, in certain jurisdictions, impose hardships on lawyers, judges, and the clerk's office.

There are various reasons—perhaps case backlogs or particular practices adopted by the court—why the holding in this case may be difficult to carry forward into practice. It is not, however, the function of this Court to mold the law to conform to perceived hardships. It was the General Assembly that imposed the ninety day filing and show cause order requirements, and it must be the General Assembly that decides to do away with the same.

In future cases, the following question might arise: If a forfeiting authority exercises due diligence and makes reasonable efforts to have the court execute a show cause order, but, through no fault of the forfeiting authority, the court fails to do so and the forfeiting authority is consequently unable to file, or have docketed, a show cause order within the ninety-day period, is the court nonetheless compelled to order the return of the money or currency? Although a definitive resolution of this question is properly left for another case and will be fact-dependent, we observe that, under the reasoning of the Court of Appeals in *Brodak v. Brodak*, 294 Md. 10, 24–25, 447 A.2d 847 (1982) (holding that a prevailing party should not be sanctioned for the court's failure to adjust the property rights of the parties within ninety days after granting an absolute divorce), it could be argued reasonably that it would be manifestly unfair to impose a sanction on the forfeiting authority if it took all steps reasonably necessary to comply with the statutory requirements.

In the case *sub judice*, the record reveals that no steps were taken by the County to maximize the potential for the court to have executed the show cause order within the ninety-day period. On this record, the best that can be said is that the County may have laid into the hands of the circuit court clerk, on the eighty-ninth day of the ninety-day period, an unexecuted show cause order form. Suffice it to say that, presented with a different and more complete record, we might reach a different result.

**JUDGMENT REVERSED; CASE REMANDED TO THE CIRCUIT COURT WITH INSTRUCTIONS TO EN-**

TER AN ORDER CONSISTENT WITH THIS OPINION. APPELLEE TO PAY THE COSTS.

GARRITY, Judge, Dissenting

I respectfully dissent. I would affirm on the grounds that the Legislature intended that a mere *pro forma* order to show cause be filed along with a complaint for forfeiture and supporting affidavit. As the complaint and affidavit were recorded by the clerk as having been timely filed, there was substantial compliance with Md.Code (1957, 1992 Repl.Vol.), Art. 27, § 297(d)(2)(i).

I strongly disagree that the Legislature intended that an "executed" show cause order be filed within the 90 day period following conviction. An applicant has the ability to prepare and file a completed complaint and affidavit, but not to execute a show cause order. The applicant can only submit a proposed, *pro forma* order to show cause why the relief requested in the complaint, based on evidence in the affidavit, should not be granted.

On the rationale that the General Assembly would not enact legislation requiring parties to perform acts they lack the ability to accomplish, I would hold that the initiation of forfeiture proceedings of money or currency is satisfied by the proper executive authority filing a complaint, affidavit, and *proposed* show cause order within 90 days following conviction.

The majority, by interpreting Art. 27 § 297(d)(2)(i) as mandating an "executed" show cause order be filed within the 90 day period following conviction, directly and unconstitutionally thrusts the judicial branch into the initiation of forfeiture proceedings, a function that is vested solely in the proper executive authority. The legislative scheme of initiation of such proceedings was simply not designed to be made dependent on the judicial act of signing a show cause order within 90 days following conviction. Granting that the time constraint imposed by the legislature for the institution of proceedings for forfeiture of money or currency is for the benefit of the defendant, I do not believe that we can ignore the fact that

this time constraint is imposed on the executive officer who files the complaint for forfeiture, not on the court. The executive officer seeking forfeiture must institute proceedings within 90 days after final disposition of criminal proceedings, in default of which the seized currency is returnable to the defendant. Since the executive officer can only include a proposed show cause order, not a judicially executed one, with the complaint for forfeiture, the only logical interpretation of "show cause order" in Art. 27, § 297(d)(2)(i) and (ii) is that of a proposed order for a judge to sign.

Although the County emphatically pleads that it did in fact timely submit a show cause order form in a document that the clerk recorded as only containing a complaint (and the majority acknowledges that such may have occurred), the County utterly failed to file a motion to correct the record, in accordance with Md. Rule 2–535(d), when it became clearly evident that the docket entries did not reflect the filing of an unexecuted show cause order form on its behalf. As an appellate tribunal, we are limited to consideration of the record before us. Regardless of the tardy protestations of the County, because the record failed to note that a proposed show cause order had been timely submitted on its behalf, we must assume that the show cause order form was not included in the original document filed.

That being said, however, I would affirm on the basis of substantial compliance. There was absolutely no question that the complaint and supporting affidavit were timely filed. There is also no question that Md. Rule 2–101 provides that, "[a] civil action is commenced by filing a complaint with a court." As Judge Perry, the motion's judge, apparently did, I would read that rule in conjunction with §§ 297(d)(2) and 297(d)(3)(i), and conclude that because the complaint and its supporting affidavit had been filed within the 90 days period after conviction, there was substantial compliance with the statutory procedure to institute a forfeiture proceeding. To hold otherwise would be to place the failure to submit a mere form containing a show cause order on an equal substantive plane with that of filing a complaint.